505 A.2d 273

**COMMONWEALTH of Pennsylvania**

v.

**Edward M. HABER, Appellant.**

Superior Court of Pennsylvania.

Submitted April 3, 1985.

Filed Feb. 11, 1986.

John P. Lawler, Stroudsburg, for appellant.

James F. Marsh, District Attorney, Stroudsburg, for Commonwealth, appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

CAVANAUGH, Judge:

Edward Haber appeals from a judgment of sentence entered against him by the Court of Common Pleas of Monroe County. Appellant was convicted by a jury of one count each of corruption of a minor and indecent assault. He alleges, *inter alia,* that the trial court committed reversible error in admitting the hearsay testimony of the mothers of the two alleged victims. We agree.

In the late spring or early summer of 1982 one of the alleged victims, Darrell Leigh-Manuel, then four and one-half years old, told his mother that he and Jaclyn Predmore, a five year old neighbor, had been sexually abused by

appellant. Darrell's mother contacted Jaclyn's mother. The two mothers then interviewed their children and contacted the police. Through information obtained from the children and their mothers, the police eventually arrested and charged appellant with the above-stated crimes.

Appellant was tried twice. The first trial ended in a hung jury. The second trial ended in his conviction.

Prior to the first trial, the trial judge held a competency hearing, as a result of which he ruled that Darrell was competent to testify as to all matters, but that Jaclyn could not be questioned concerning the identity of the person whom she alleged had molested her. She was allowed to testify about the molestation itself.

At trial Mrs. Leigh-Manuel and Mrs. Predmore testified at length as to the stories told them by their children. Their testimony included statements about what was physically done to the children, and as to the identity of the alleged molester. This testimony was crucial to the Commonwealth's case because the testimony of the children themselves consisted mostly of monosyllabic answers to leading questions, and both children repeatedly stated that they were unable to remember details about what happened. There were no other eyewitnesses to the events that the children reported to their mothers.

■ It is clear that the testimony of Mrs. Leigh-Manuel and Mrs. Predmore as to what their children told them was hearsay, since it related out-of-court assertions that were offered to prove their truth. Thus it was inadmissible unless it fit within an exception to the hearsay rule. The exception most commonly used by the courts to allow the admission of a child's statements regarding sexual abuse is the spontaneous declaration, or excited utterance exception. But in order to fall under this exception, the statement must have been made so spontaneously as to be under the excitement caused by the event, so as to preclude the possibility of fabrication.

There is no evidence that the statements of the children were made under the stress of excitement caused by an exciting event or condition, as is required. On the contrary, the first relevant assertion was a comment made by Darrell during a conversation between Darrell's older brother and his mother. The other assertions were made during interviews conducted by the mothers with their children. Also, the record does not disclose the length of delay between the alleged criminal acts and the childrens' assertions to their mothers. Clearly the excited utterance exception cannot be used to qualify the hearsay testimony of Mrs. Leigh-Manuel and Mrs. Predmore. See *Commonwealth v. Kasko*, 322 Pa.Super. 62, 469 A.2d 181 (1983).

■ The testimony of Mrs. Leigh-Manuel and Mrs. Predmore does not come within any exception to the hearsay rule that is recognized in Pennsylvania. The Commonwealth, however, asks us now to create a new exception to the hearsay rule for the out-of-court assertions of children pertaining to sexual abuse.

When considering the adoption of a new rule of evidence, it is often enlightening to review what other jurisdictions have done and to see how legal scholars view the matter.

In the last 22 years, the federal courts and 33 states have conducted studies of their rules of evidence culminating in their codification. Each of these 34 codifications includes the hearsay rule. Each of them delineates 25 to 35 exceptions to the hearsay rule. None of them includes an exception for the out-of-court assertions of children, whether relating to sexual activity or anything else.

In the other 16 states (Pennsylvania is the 17th) the hearsay rule is applied as a matter of common law development by the courts. None of the courts in these 16 states has created an exception to the hearsay rule for the out-of-court assertions of children.[1]

1. We are not impressed by the fact that the legislatures in a handful of states have enacted statutes that permit the state to introduce the out-of-court assertions of children in child abuse cases. It is hard for a legislator, who must periodially run for reelection, to vote against a

The National Conference of Commissioners on Uniform State Laws has adopted what it calls the "Uniform Rules of Evidence." The current version, which was adopted in 1974, contains the hearsay rule, 30 exceptions thereto, and two exceptions to the definition of hearsay. It does not include an exception for the out-of-court assertions of children.

In the twelve volumes of *Wigmore on Evidence* there is no recognition of an exception to the hearsay rule for the out-of-court assertions of children. Such an exception is not recognized in *Jones on Evidence,* or in *McCormick on Evidence,* or in Binder's *Hearsay Handbook.*

The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact. Exceptions to the hearsay rule have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule. *See* Binder, *The Hearsay Handbook* (Second Edition), Chapter Three and Introduction to Part II.

We do not believe that the out-of-court assertions of children, particularly four and five year old children, are substantially more trustworthy than the out-of-court assertions of adults. Life experience furnishes no basis upon which we can fairly conclude that children have any special qualities which render them as being dependably accurate historical reporters. Therefore, such assertions of children do not merit exception to the hearsay rule.

Evidentiary rules, including the hearsay rule, have a *raison d'etre.* Experience has taught us that trials conducted in accordance with such rules increase the likelihood

proposed statute that makes it easier to convict persons accused of child abuse, because of the danger that an opportunistic opponent and an unsophisticated electorate may interpret such a vote as being soft on crime in general, or soft on child-abusers in particular. Politically, the safest thing for a legislator to do is to vote in favor of such a statute, regardless of its merits, and leave it to the courts to deal with the ramifications of its enactment.

of a fair and just resolution of the issues by the trier of fact. Otherwise, we would jettison the lot of them.

It is true, of course, that permitting the Commonwealth to introduce the out-of-court assertions of children against the defendant in a child abuse case would make it easier to convict the guilty. Unfortunately, it would also make it easier to convict the innocent. If such a trade-off is acceptable, why not suspend the hearsay rule entirely when the Commonwealth introduces evidence in a criminal case? More defendants, guilty and innocent alike, would undoubtedly be convicted. The same result would obtain if we allowed the Commonwealth to introduce coerced confessions.

However, such a trade-off is not acceptable. It is a fundamental precept of law in Pennsylvania that one charged with crime, be it murder, child abuse, or keeping a public nuisance, comes to trial clothed in the presumption of innocence. If we bear this in mind, we will be less tempted to distort the law of evidence in favor of the Commonwealth in order to increase the conviction rate. The Commonwealth should be bound by the same rules of evidence, including the hearsay rule, as other litigants.

■ In this case the trial court compounded its error in admitting the hearsay testimony of Mrs. Leigh-Manuel and Mrs. Predmore when it ruled that Jaclyn Predmore could not be questioned concerning her accusation identifying defendant as her molester. This violated defendant's right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution.

If Jaclyn Predmore, while on the stand, had accused defendant in front of the jury of molesting her, defendant's constitutional right fully and adequately to cross-examine her would be apparent. *See Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974), in which the Supreme Court explained:

The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be

confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v Texas,* 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065 (1965). Confrontation means more than being allowed to confront the witness physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Douglas v Alabama,* 380 US 415, 418, 13 L Ed 2d 934, 85 S Ct 1074 (1965). ...

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

Appellant did not forfeit his constitutional right of cross-examination merely because Jaclyn's accusation against him was presented to the jury indirectly by means of the hearsay testimony of her mother. Appellant's need to cross-examine Jaclyn concerning her accusation against him was greater than if she had made it from the witness stand, because she made it without benefit of oath, not subject to the penalty of perjury, and without the presence of the trier of fact.

Appellant did not receive a fair trial in the instant matter. The case against him was established by the admission of excludable hearsay in contravention of well-established Pennsylvania evidentiary law.

■ Appellant also makes four additional allegations of error. The first point raised involves the out-of-court identification of appellant by Darrell Leigh-Manuel. Appellant argues that the lower court erred in admitting testimony given by a police officer regarding the out-of-court identification, as this testimony was inadmissible hearsay. We find that, since the testimony was corroborative, it was properly within the discretion of the trial court to allow its

admission. *See, Commonwealth v. Dean,* 300 Pa.Super. 86, 445 A.2d 1311, 1313 (1982).

The relevant testimony was elicited as follows. Initially, on direct examination of Officer Olsen, the Commonwealth did not bring out testimony as to the photo array identification made by the victim. Next, Darrell Leigh-Manuel testified, both making an in-court identification of the appellant, and confirming the previous photo array identification. Subsequently, on redirect, Officer Olsen was questioned and testified as to Darrell's out-of-court identification. Therefore, this testimony was clearly corroborative evidence. Defense counsel previously had the opportunity to cross-examine the declarant regarding the out-of-court identification, therefore appellant was not prejudiced. The trial court did not abuse its discretion in admitting the testimony. *See also, Commonwealth v. Sanders,* 260 Pa.Super. 358, 394 A.2d 591 (1978).

Moreover, this reasoning does not run afoul of the recent supreme court decision of *Commonwealth v. Floyd,* 508 Pa. 393, 498 A.2d 816 (1985) which deals with the admissibility of a prior identification through the testimony of a third party. In *Floyd,* unlike here, the witness who made the out-of-court identification did *not* make an in-court identification, therefore, the prior identification was not corroborative evidence.

■ The second alleged error concerns the competency of the victims to testify at trial. Appellant contends that the lower court erred in admitting the testimony of the children without adequate inquiry into their competence at the time of the second trial. We find that the lower court's first inquiry was adequate and, consequently, no error was committed.

The lower court properly reasoned that a second competency hearing was not necessary since it had already determined the competency of the children to testify. During the competency hearing, the court correctly complied with the standard set forth in *Rosche v. McCoy,* 397 Pa. 615, 156

A.2d 307 (1959) which lists the factors to be considered. To be competent, a youthful witness must have a capacity to communicate, including an ability to understand questions and to frame and express intelligent answers; mental capacity to observe and remember the occurrence; and a consciousness of the duty to speak the truth. *Rosche,* Id., 397 Pa. at 620–621, 156 A.2d at 310. It was properly within the lower court's discretion to decide on the competency of the children. A thorough examination was made, and the trial court found Darrell Leigh-Manuel competent to testify as to all matters, and Jaclyn Predmore competent to testify only as to matters relating to the actual physical attack upon her.

The lower court did not err in its refusal to conduct a second hearing, rather its decision was well within the proper discretion of the trial court. Furthermore, appellant had a safeguard against inaccurate testimony in his right to impeach the children's later testimony through the record of their statements at the first trial. *See Zank v. West Penn Power Co.,* 169 Pa.Super. 164, 82 A.2d 554 (1951).

■ Appellant next argues that the trial court erred in refusing to declare a mistrial, strike the testimony of Officer Olsen, or give the jury precautionary instructions when it was determined that the officer had disposed of his investigatory notes. Appellant contends that the officer's actions prevented effective cross-examination, denying him a fair and impartial trial. However, we find that under *Commonwealth v. York,* 319 Pa.Super. 13, 465 A.2d 1028 (1983), the lower court did not err. *York* sets forth the requirements which determine whether testimony should be suppressed because of the destruction of evidence related thereto. Under *York,* which cites *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706, rehearing denied, 409 U.S. 897, 93 S.Ct. 87, 34 L.Ed.2d 87 (1972), in order for the destruction of the notes to be a violation meriting a mistrial, proof is required of the following: suppression of evidence by the prosecution after a request by the defense; the favorable character of the

evidence for the defense; and the materiality of the evidence. *York*, Id. 319 Pa.Super. at 18, 465 A.2d at 1029. Clearly, in the present case, the first and third requirements were not met by appellant. There was no evidence proving that the prosecution was responsible for destroying the notes after a request by the defense, and furthermore, appellant could not prove the materiality of the notes. This is because, as was reasoned by the lower court, the substance of the original notes was incorporated into the officer's arrest warrant affidavit prior to their destruction. Thus, the notes were only cumulative evidence. Furthermore, the officer testified for the Commonwealth and was cross-examined by the defense; therefore, proper procedural safeguards were met.

Lastly, we do not reach the issue of merger as to the two crimes since appellant's conviction is reversed.

Judgment of sentence reversed. Remanded for a new trial. Jurisdiction relinquished.

OLSZEWSKI, J., dissents.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent from the majority's opinion that a tender years exception to the hearsay rule should not be judicially created. This exception arises out of the necessity for the evidence and a profound respect for the tender years of the victims of sexual abuse.

The incidence of child sexual abuse has increased dramatically in recent years.[1] The crimes are inherently difficult

---

1. A national study by the American Humane Association showed a 200% increase in the reporting of child sexual abuse since 1976. By 1980, there were 25,000 reported cases of child sexual abuse per year. Collins, Statistics Find Sexual Abuse of Children is Widespread, New York Times, May 13, 1982 at C1, col. 1, C10, col. 2. There is a strong indication that statistics of reported cases may understate the problem as the child may refuse to report the problem or the parents may refuse to go to the authorities. *Id.*, at C10, cols. 5–6; *see generally* Comment, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 18 Colum.L.Rev. 1745 (1983); Note, *A Tender Years Doctrine for the Juvenile Courts: An Effective Way to Protect the Sexually Abused Child,* 61 U.Det.J. of Urban Laws 249 (1984).

to detect. Child sexual abuse is predominantly nonviolent; it usually occurs in secrecy with the child victim as the only witness. Often the offender is a parent, relative, or an acquaintance of the child. Conviction of the child abuser is equally difficult due to the lack of witnesses or corroborative physical evidence, or the reluctance or inability of the victim to testify against the defendant.[2] In the face of overwhelming circumstantial evidence implicating a defendant, the courts are faced with the dilemma that the victims are often found incompetent to testify or, during the passage of time between the incident and trial, the victims will lose their ability to recall coherently the details of the event.[3]

Courts in several of our sister states, out of recognition that the statements are often the only proof of the crime, have admitted out-of-court statements by sexually abused children under traditional exceptions to the hearsay rule. The majority of courts have chosen a flexible application of the spontaneous declaration exception.[4] The rationale for

**2.** A 1969 study of 250 cases of child sexual abuse reported to New York City's protective services showed that less than one percent of the cases resulted in conviction. Collins, *supra*, n. 3 at C10, col. 5.

**3.** We are sensitive to the related problem that children who are prepared too thoroughly to testify tend to sound rehearsed and unconvincing.

**4.** *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1980) (spontaneous declaration of nine year old victim of assault with intent to commit rape made to police officer); *United States v. Nick,* 604 F.2d 1199 (9th Cir.1979) (spontaneous declaration of three year old victim of sexual assault made to the victim's mother); *Beausoleil v. United States,* 107 F.2d 292 (D.C.Cir.1939); *People v. Orduno,* 80 Cal.App.3d 738, 145 Cal.Rptr. 806 (1978), *cert. denied,* 438 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1978); *Lancaster v. People,* 200 Colo. 448, 615 P.2d 720 (1980); *Jackson v. State,* 419 So.2d 394 (Fla.App.1982); *People v. Miller,* 58 Ill.App.3d 156, 15 Ill.Dec. 605, 373 N.E.2d 1077 (1979); *Skaggs v. State,* 438 N.E.2d 301 (Ind.App.1982); *State v. Rodriguez,* 8 Kan.App.2d 353, 657 P.2d 79 (1983); *Smith v. State,* 6 Md.App. 581, 252 A.2d 277 (1967); *People v. Edgar,* 113 Mich.App. 528, 317 N.W.2d 675 (1982); *Williams v. State,* Miss., 427 So.2d 100 (1983); *State v. Duncan,* 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978); *State v. Souza,* — R.I. —, 456 A.2d 775 (1983); *Arvey v. Texas,* 646 S.W.2d 320 (Tex.App.1983); *State v. McMillan,* Utah, 588 P.2d 162 (1978); *State v. Padilla,* 110 Wis.2d 414, 329 N.W.2d 263 (1982).

the exception is that, under certain circumstances, extreme excitement or shock may paralyze the declarant's ability to reflect and contrive an unreliable statement. *See Commonwealth v. Von Smith*, 303 Pa.Super. 534, 450 A.2d 55 (1982); *compare Commonwealth v. Zukauskas*, 501 Pa. 500, 462 A.2d 236 (1983) (noncontemporaneous statement inadmissible). Proper application of the exception requires that the utterance be spontaneous and so closely related in time as to be precipitated by the traumatic event. *Commonwealth v. Zukauskas, supra.* The utterance is deemed. to be reliable because the declarant is acting as "the medium and not the message." *Id.*, 501 Pa. at 503, 462 A.2d at 237.

The spontaneous declaration exception has suffered heavy criticism for its application in the context of child sexual abuse. Its principle weakness lies in its reliance on spontaneity as an indicator of trustworthiness. Responding to the need to admit the out-of-court statements by child victims, the courts have expanded the spontaneity requirement to admit statements made hours or days after the traumatic event. *See Lancaster v. People*, 200 Colo. 448, 615 P.2d 720 (1980) (one-half-hour delay); *Williams v. State*, Miss., 427 So.2d 100 (1983) (twelve-hour delay—first reasonable opportunity to complain); *State v. Creighton*, —— R.I. ——, 462 A.2d 980 (1983) (eighteen-hour delay); *State v. Padilla*, 110 Wis.2d 414, 329 N.W.2d 263 (1982) (three days).

Any extension of the time element of the rule, however, eviscerates the justification for the exception: a spontaneous statement does not allow time for reflection or fabrication. As noted above, child sexual abuse is peculiarly susceptible to evading prompt discovery due to factors of embarrassment, the involvement of relatives or close acquaintances, and the evanescent nature of a child's memory. A child may not have the capacity to articulate what has

happened to him or her. Indeed, a child may not know that what has been done to him or her is wrong.[5]

This Court has recently considered the use of the spontaneous declaration exception to admit hearsay testimony in child abuse cases. In *Commonwealth v. Kasko*, 322 Pa.Super. 62, 469 A.2d 181 (1983) (per Cavanaugh, J., joined by Hoffman, J.), we reversed and remanded where a defendant was convicted upon testimony by the mothers of victims of child abuse as to statements by the children. The Court rejected application of the spontaneous declaration exception where the statements referred to the defendant's activities which had occurred on an unascertainable prior date. The Court recognized that "(w)hile the law fixes no definite time within which statements must be made to be received as part of the res gestae, there must be no break in the continuity of the litigated acts which would afford time for reflection." *Id.*, 322 Pa.Superior Ct. at 70, 469 A.2d at 185 (citation omitted). The Court held the spontaneous declaration exception inapplicable where the crucial statements came after extensive questioning by the parents of the children. "While the fifteen minutes itself afforded time for reflection, the parental interrogation demanded that reflection." *Id.*, 322 Pa.Superior Ct. at 70, 469 A.2d at 186. There is no question but that the testimony in the instant case would be barred under the spontaneous declaration decision. The record shows no evidence of the length of delay between the criminal act and Darrell Leigh-Manuel's report of the event. Although *Kasko* is a correct analysis of the spontaneous declaration exception as applied to the facts of that case, I would hold that a new rule is necessary in cases of child sexual abuse.

The weakness of the spontaneous declaration exception lies in its reliance on spontaneity as the sole indicator of trustworthiness. Where the length of the delay in reporting cannot be ascertained, application of the spontaneous declaration exception can yield only inconsistent results.

**5.** *See* Comment, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 18 Colum.L.Rev. 1745, nn. 92–105 and accompanying text.

Such inequity is not impelled when there exist excellent alternative indicia of reliability.[6]

The critical need for a victim's testimony in child sexual abuse cases, and the inadequacy of the spontaneous declaration exception in meeting that need, has been met by the creation of a specific tender years exception to the hearsay rule by a growing number of courts and legislatures. Since 1982, seven states have realized, and acted upon this need. S.D. Codified Laws Ann. Sec. 19–16–38 (1984); Ind.Code Ann. Sec. 35–37–4–6 (1984); Act of April 26, 1984, Ch. 588, Sec. 4, 1984 Minn.Sess.Law Serv. 415–416; Kan.Stat.Ann. Sec. 60–460–(dd) (1982). *See* Colo.Rev.Stat. Sec. 13–25–129 (1983); Utah Code Ann. Sec. 76–5–411 (1983); Wash.Rev. Code.Ann. Sec. 9A.44.120 (1982); *see also State v. McCafferty*, S.D., 356 N.W.2d 159 (1984) (interpreting tender years statute); *Bertrang v. State*, 50 Wis.2d 702, 184 N.W.2d 867 (1971) (tender years exception found under Wisconsin Rules of Evidence, Rule 908.03(24), Residual Hearsay Exception).[7] The Commonwealth of Pennsylvania

**6.** Alternative hearsay exceptions used in child sexual abuse cases also suffer from the limitations brought on by their application in a non-traditional context. *See generally United States v. Nick*, 604 F.2d 1199 (9th Circ.1979) (statement of physical condition); *Fitzgerald v. United States*, D.C., 412 A.2d 1 (1980), *aff'd.*, 443 A.2d 1295 (1980) (en banc) (complaint of rape doctrine limited to show only that complaint was made); *Thomas v. State*, 92 Wis.2d 372, 284 N.W.2d 917 (1979) (prior consistent statement); *Goldade v. State*, Wyo., 674 P.2d 721 (1983) (physician's treatment and diagnosis exception expanded to admit hearsay identification testimony).

**7.** Note that Michigan's judically created tender years exception was abolished by the Michigan Supreme Court upon the legislative adoption of the Michigan Rules of Evidence. *People v. Kreiner*, 415 Mich. 372, 329 N.W.2d 716 (1982); *compare People v. Debreczeny*, 74 Mich. App. 391, 253 N.W.2d 776 (1977) (defining common law tender years exception). The *Kreiner* court held that the Michigan Rules of Evidence adopted only the specifically enumerated exceptions of the Federal Rules of Evidence to the hearsay rule and that the tender years exception was not a specific exception. 415 Mich. at 373, 329 N.W.2d at 717. Further, the Michigan legislature failed to adopt an analog to the catch-all provision of the Federal Rules of Evidence, Rule 803(24). For an excellent review of the development and demise of the tender years exception in Michigan, see Note, *A Tender Years Doctrine for the Juvenile Courts: An Effective Way to Protect the*

General Assembly recently passed Senate Bill No. 1361 by both houses on November 29, 1984. The Bill provided for the admission of out-of-court statements made by a child victim.[8] Due to an unrelated, last-minute amendment, the Governor vetoed the Bill on December 26, 1984.[9] This Bill was spawned by the legislature's awareness of the inadequacy of the spontaneous declaration exception in serving the public welfare in child sexual abuse cases.[10]

Against this background of necessity for a victim's testimony in the context of child sexual abuse and the successful protection of an accused's interests in the criminal process by our sister jurisdictions, the tender years exception to the hearsay rule should be adopted as the law of this Commonwealth:

*Sexually Abused Child*, 61 Univ. of Det.J. of Urban Law, 249 (Wint. 1984).

8. Bill 1361 Would have amended 42 Pa.C.S. Chapter 59 (Admissibility of Certain Statements) and provided:
(A) GENERAL RULE—An out-of-court statement made by a child victim or witness describing indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or rule of evidence is admissible in evidence in any criminal procceding if:
(1) The Court finds, in an in camera hearing, that the evidence is necessary, and that the time, content and circumstances of the statement provide sufficient indicia of reliability.
(2) The child either:
(I) Testifies at the proceeding; or
(II) Is unavailable as a witness if there is corroborative evidence of the act.
(B) NOTICE REQUIRED—A statement otherwise admissible under subsection (A) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement, sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence, to provide the adverse party with a fair opportunity to prepare to meet the statement. Senate Bill No. 1361 of 1984. We have followed this Bill in the rule we adopt today.

9. A similar bill prepared by the California legislature has met the same fate. California Senate Bill 621 of 1983.

10. The majority gives little credit to the legislatures of our states who have voted to allow the introduction of out-of-court statements. This implies that the legislators are not doing their very best to uphold the constitution and do what is best for our welfare.

An out-of-court statement made by a child victim or witness describing indecent contact, sexual intercourse, or deviate sexual intercourse performed with or on the child by another is admissible in evidence in any criminal proceeding if:

(1) The court finds, in an *in camera* hearing, that the evidence is necessary, and that the time, content, and totality of the circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *provided* there is some other evidence of the act.

A statement may not be admitted into evidence under this exception unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to meet the statement.[11]

This tender years exception provides ample opportunity to test the reliability of the evidence and withstands constitutional scrutiny under the confrontation clause of the Sixth Amendment.[12] Reliability will be determined by the court in an *in camera* hearing. The court should consider the totality of circumstances, including: the time, content, and context of the statement; the language used by the child; the age and maturity of the child; the nature and duration of the abuse; the relationship of the child to the offender; and any other factor relevant to the case. This analysis is similar to Rule 803(24) of the Federal Rules of Evidence, the

11. *Compare* Wash.Rev.Code Ann. Sec. 9A.44.120 (1982); Pennsylvania General Assembly Senate Bill 1361 (1984), n. 9 *supra*. Similar amendment of state evidentiary codes is recommended by the Young Lawyers Division of the American Bar Association. *National Legal Resource Center for Child Advocacy and Protection, Recommendations for Improving Legal Intervention in Intrafamily Child Sexual Abuse Cases,* Section 4.3 (October 1982).

12. Appellant challenges the constitutionality of the admission of the statements under the Sixth Amendment.

so-called catch-all hearsay exception. There, as within the limited area of child abuse cases, a court may admit hearsay which does not fit under a traditional enumerated exception if there are guarantees of reliability comparable to the guarantees of a traditional exception.[13]

Through examination of the totality of the circumstances, a court may determine that a child's delay in reporting an incident of sexual abuse is explainable and consistent with the event. Relevant factors are fear, embarrassment or a child's incomprehension. This analysis is simply not available under the spontaneous declaration exception. *Compare Commonwealth v. Kasko, supra.* Further, the tender years exception allows a court to determine, on a case-by-case basis, whether the victim of an assault is of an age which renders it improbable that the statement was premeditated or fabricated.[14] While there is no clear evidence that a statement by a child, specifically describing sexual abuse, is more or less trustworthy than that of an adult, the necessity for this evidence persuades us that this determination is properly resolved under the totality of the circum-

**13.** Rule 803(24) states:
Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
Federal Rules of Evidence, Rule 803(24).

**14.** *Compare State v. McCafferty,* S.D., 356 N.W.2d 159 (1984) (young child is unlikely to fabricate graphic account of sexual activity beyond the ken of personal experience); *and Wilson v. United States,* 271 F.2d 492 (D.C.Cir.1959) (citing Guttmacher & Weihofen, *Psychiatry and the Law* 374 (1952) (young child is highly suggestible, confused and fascinated about sexual activity; and does not understand serious consequences of charges) ).

stances.[15] Justice demands that the law of the Commonwealth evolve to permit consideration of the reliability of the statement.

Further indicia of reliability are provided by the requirement that there be some other evidence to support the allegation of illegal sexual conduct where the declarant is unavailable to testify at trial. While in most cases this "other evidence" will be corroborative evidence, in some situations the supporting evidence will be that which is probative on the issue of sexual abuse: an accused's prior conviction on similar charges, complaints by other children, or other evidence not admissible at trial.

Our result today is consistent with the policy underlying the Commonwealth's Child Protective Services Law, 11 Pa. C.S. Sec. 2201 et seq. This legislation seeks to protect children from abuse by requiring the reporting of child abuse by any persons who come in contact with an abused child in the course of employment. 11 Pa.C.S. Sec. 2204. It would be anomalous to prohibit the admission of out-of-court statements without special consideration of reliability where the legislature has gone to great lengths to insure that reports of child abuse will be brought to the attention of responsible authorities.

The tender years exception allows the courts more flexibility and promotes reliability to a degree greater than use of an expanded version of the spontaneous declaration exception. Expanded use of the spontaneous declaration arose from the need to admit critical testimony; yet the relaxation of the contemporaneity requirement undercut with the theoretical justification for the exception. The tender years exception arises from that same need to admit

15. *See Goldade v. State*, Wyo., 674 P.2d 721 (1983):

If the goal of our court were simply to pursue the common-law tradition of stare decisis, then the cited authorities must be recognized as supporting the position of the appellant. In this instance, however, the function of the court must be to pursue the transcendent goal of addressing the most pernicious social ailment which afflicts our society ... child abuse.

*Id.*, 674 P.2d at 725.

crucial testimony, but its strength lies in specifically meeting the unique circumstances of child sexual abuse. Child sexual abuse was simply not anticipated when the spontaneous declaration exception was created. The hearsay exception which we carve out today responds to a prevalent and pernicious offense against the most vulnerable members of society, our children.[16]

The tender years exception also meets the demands of the confrontation clause of the Sixth Amendment. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI; *see Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (confrontation clause applies to the states through the Fourteenth Amendment). Despite the apparent plain meaning of the confrontation clause, the framers of the constitution did not intend to exclude all hearsay. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The policy behind the confrontation clause must give way to the public's interest in effective law enforcement, the probative necessities of particular cases, and other policy considerations. *Ohio v. Roberts,* 448 U.S. at 64, 100 S.Ct. at 2538. Against the probative necessity for the tender years exception, we must balance the policy behind the confrontation clause in two instances where a child's out-of-court statements may be admitted.[17]

Where the child is available or testifies at trial, protections inhere in an accused's right to cross-examine as to inconsistencies in testimony. In *California v. Green,* 399

16. *See Soto v. Territory,* 12 Ariz. 36, 39, 94 P. 1104, 1105 (1908).

17. During the course of this case, Darrell Leigh-Manuel was found competent and did testify at trial; Jaclyn Predmore was permitted to testify only as to what was physically done to her and therefore was not fully "available" as a witness in light of the scope of her admitted out-of-court statements. *See United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980) (declarant too young to be subjected to thorough cross-examination as envisaged by the constitution); *United States v. Nick,* 604 F.2d 1199 (9th Cir.1979).

U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court stated:

(T)he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.

399 U.S. at 164, 90 S.Ct. at 1938.

The admissibility of an available child victim's extra-judicial statements has been upheld against confrontation clause challenges. *See United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980) (nine year old victim unable to repeat statements made to police officer).

Where the child is unavailable or unable to testify at trial, a different test must be employed. We must look at the hearsay statements themselves to determine whether the admitted hearsay statements had particularized guarantees of trustworthiness to afford the trier of fact a satisfactory basis for evaluating the reliability of the statements. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980); *United States v. Nick*, 604 F.2d 1199 (9th Cir. 1979). Analysis of an offered hearsay statement under the totality of circumstances approach of the tender years exception allows the trial court to determine whether circumstantial guarantees of trustworthiness have been met. The requirement of notice of the Commonwealth's intent to use the hearsay testimony will offer substantial protection to the accused. *See State v. McCafferty*, S.D., 356 N.W.2d 159, 164–165 (1984). Further, the requirement that the court determine admissibility in an *in camera* hearing serves to protect an accused from the potentially prejudicial effect of the emotional impact of foundation testimony in this type of case. Finally, where the child declarant is unable to testify, the tender years exception goes beyond the requirements of the Sixth Amendment by requiring that

"other evidence" be available as indicia of reliability. *See Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539 (requiring only that the statement itself contain "adequate indicia of reliability"); *see generally* Comment, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis*, 8 J. of Juvenile Law 59, 70–73 (1984). The majority is reluctant to create this new exception. They should not be. The courts have never held that all out-of-court statements must be excluded. In fact, the Supreme Court as early as 1895 realized that the general prohibition of hearsay evidence must occasionally give way to considerations of public policy and the necessities of the case.[18] There can be no better case than the one presently before us.

In reviewing the facts of this case, there is no question but that the hearsay statements of the children, admitted through the testimony of their mothers, failed to satisfy the contemporaneity requirement of the spontaneous declaration exception. *Commonwealth v. Kasko, supra.* The sole evidence of the time frame between the incidents and the children's statements is that Darrell's incontinence began several months prior to his conversation with his mother. Neither child could fix the date of the incidents with precision.

Nevertheless, the hearsay was properly admitted under the tender years exception. The statements of both children concerned improper sexual contact by appellant. It is apparent from the record that the statements were absolutely necessary to allow a proper resolution of this case. During the ten months between discovery of the incidents and appellant's second trial, the memories of these four- and five-year-old children had faded considerably. At trial, Darrell's responses to questions consisted of single-word or "yes" and "no" answers. Notes of Trial at 146 et seq. Jaclyn's responses, limited by the pretrial order to what had happened to her, were equally monosyllabic. Notes of Trial at 175 et seq. Both children repeatedly stated that they

18. *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

were unable to remember details of the incidents. The testimony of the mothers was absolutely necessary to give the jury an opportunity to evaluate the events in a coherent manner and from a time when the events were relatively fresh in the children's minds.

Under the second stage of the tender years analysis, a child's statements must be amply supported by indicia of reliability and trustworthiness. Judge Cavanaugh is of the opinion that small children are inherently unreliable because of their vivid imaginations.[19] Even an imagination, however, must have some basis in fact. You cannot imagine what you do not know about. Darrell was four and one-half years old at the time the statements were made. The matter emerged only because of a chance conversation between Darrell's brother and his mother. There are no indications that Darrell fabricated his story. In fact, it is extremely unlikely that he could have imagined this scenario. Darrell positively identified appellant among a large number of people at a pre-arrest confrontation, at a photographic display, at a lineup, and in court. Although not required due to Darrell's availability at trial for cross-examination, Darrell's statement was corroborated by the testimony of his examining physician. By way of illustration, evidence of Darrell's incontinence was relevant as "other evidence" supporting the trustworthiness of the statement.

The testimony of Mrs. Predmore as to Jaclyn's out-of-court statements was also admissible under the tender years exception. The statements were necessary to reach a just disposition in this case. Jaclyn's testimony showed the effects of the ten month delay between the event and trial even more severely than did Darrell's testimony. At trial, the record shows that Jaclyn was somewhat intimidated by

19. There is always a chance that a charge of sexual abuse is fictitious, but these instances do not happen often. In addition, as the analysis of child abuse and abusers continues, it is becomeing possible to recognize certain signs or signals alerting investigators and doctors to this fact.
David P.H. Jones, *Reliable and Fictitious Accounts of Sexual Abuse in Children,* to be published in the Journal of Inter-personal Violence, Issue 2, June, 1986.

the proceedings, to the point of giving conflicting answers to questions twice asked. The statements were necessary to give the jury a coherent version of Jaclyn's story ten months earlier.

Under the second stage of the analysis, the trial court's order, limiting Jaclyn's testimony to what was actually done to her, effectively rendered her unavailable as a witness. *See United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980). Therefore, there must be sufficient indicia of reliability for her statement and other evidence of trustworthiness. It is improbable that a five year old child, acting alone or with a four and one-half year old child, could have invented this story in such detail. Jaclyn was interviewed by her mother out of Darrell's presence, yet the two stories were substantially the same. The similarity of the two stories is particularly compelling as indicia of reliability of both Darrell's and Jaclyn's statements.

Insofar as Jaclyn was effectively unavailable for cross-examination, it is necessary to look to other evidence for particularized guarantees of trustworthiness of her statement. That evidence is apparent in Darrell's incontinence resulting from the abuse and in the testimony of Darrell's examining physician. In separate interviews, both Jaclyn and Darrell gave identical accounts of the cause of Darrell's injuries. Further, both children stated that the same offenses had been committed against Jaclyn. *Compare Commonwealth v. Kasko, supra* (statements inadmissible where they followed fifteen minutes of questioning of both children by one parent and joint interrogation by both parents which demanded reflection by the children). As a child victim and witness to the indecent contact, Jaclyn's statement was properly admitted into evidence.

There is no inconsistency in the exclusion of Jaclyn's identification testimony at trial yet admission of her statement identifying appellant. The tender years exception requires examination of the statement at the time it was given. At Jaclyn's competency hearing, ten months later, the lower court properly determined that Jaclyn's memory

had faded to the point that she could not reliably identify appellant at trial.

Finally, it is apparent from the record that appellant was aware prior to trial that the Commonwealth intended to introduce these statements through the testimony of the mothers. Notes of Trial 5–7 (defense counsel's pre-trial objection to potential hearsay). The Commonwealth's intent was manifestly apparent from its use of the parents' testimony at appellant's first trial in March 1983. Appellant did not object to admission of the statements at that time. Under the circumstances of this case, appellant was on notice and had ample opportunity to prepare to meet this evidence.

Based on the foregoing analysis, I would hold that the tender years exception satisfied the reliability and trustworthiness requirements and is not inconsistent with the confrontation right of the accused. The adoption of such a statute would be an important step forward in combating the onslaught of child abuse cases.

Therefore, I would affirm.