**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIE JAMES BROWN JR. | : | |
| | : | |
| Appellant | : | No. 1430 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 31, 2019
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s):  CP-54-CR-0000036-2019

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:          **FILED: MARCH 30, 2020**

Willie James Brown, Jr., appeals from the judgment of sentence imposed July 31, 2019, in the Schuylkill County Court of Common Pleas. On June 5, 2019, a jury convicted Brown of delivery of a controlled substance (heroin and fentanyl), conspiracy to deliver a controlled substance (heroin and fentanyl), and criminal use of communication facility.[1] The trial court sentenced Brown to an aggregate term of five to ten years' incarceration plus two years of probation. On appeal, Brown claims the trial court erred by failing to grant his motion for acquittal based on prosecutorial misconduct. For the reasons below, we affirm the judgment of sentence.

The trial court set forth the underlying facts as follows:

---

[1] **See** 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903(a)(1) and 7512(a), respectively.

At trial, Minersville police officer Kai Apel - the Commonwealth's first witness - testified that he was serving in an undercover capacity on September 29, 2018. A fellow officer, Jeff Bowers, was in charge of setting up a controlled buy of drugs from [Brown] that day utilizing confidential informant Bruce Houser. The morning of September 29, 2018 Officer Apel was seated in the rear passenger seat of a motor vehicle being driven by Houser. Around 10:00 a.m. [Brown] entered the rear of the vehicle behind the driver on Lewis Street in Minersville, Schuylkill County. [Brown] was told that the men were looking to buy $300.00 worth of methamphetamine or heroin. [Brown] said that he had a connection and then used his cellphone to reach the connection. Houser drove to Rumor's Bar in Pottsville after which [Brown] directed that he drive to Barefield Park where they picked up Roxanne Roberts. The woman got in the front passenger seat of the car. She directed that Houser drive behind the Giant store to a back alley. Houser did so. Upon arriving at the location, Officer Apel handed $300.00 to [Brown] who passed the money to the woman who, in turn, passed several bags of suspected heroin to [Brown] who then transferred five bags of the suspected drugs to Apel. After Roberts left the vehicle, Houser drove to Minersville where [Brown] exited the vehicle and Apel returned to the police station and provided the five bags to Officer Bowers.

A field test on the substance in the baggies by Officer Bowers - who had been surveilling the movements of the Houser vehicle - resulted in a preliminary indication of the presence of heroin. A later chemical analysis of the substances by a forensic expert determined that the baggies contained a mixture of heroin and fentanyl. The parties stipulated to the propriety of the chain of custody of the evidence and accuracy of the drug test results.

[Brown] testified in his own defense. [Brown] admitted to having known Bruce Houser before the day of the drug transaction because Houser would give [Brown] methamphetamine. According to [Brown], Houser had asked if [Brown] could obtain heroin for him because Houser knew a woman who was an addict, was sick and needed it so she would not be sick. [Brown] testified that on the day of the incident he had originally told Houser "no". About two hours later, however, [Brown] communicated with Roxanne Roberts who asked [Brown] if he had marijuana and told [him] that she had heroin. [Brown] then called Houser and told him that he knew someone - meaning Roberts - who could help Houser. [Brown] claimed that Houser then picked up [him] and

that Apel, the undercover officer, subsequently entered the car. After the men traveled to Pottsville [Brown] texted Roberts a few times. Upon meeting her, Roberts entered Houser's vehicle. [Brown] testified that he asked Apel for the $300.00, Apel handed the money to [him] who then gave it to Roberts. According to [Brown], Roberts gave the drugs to the officer. [Brown] claimed that the only reason he facilitated the heroin delivery was because he wanted to help ease the withdrawal symptoms of the unknown woman to whom Houser had referred. Further, [Brown] testified that he did not receive heroin that day but that Houser subsequently gave him methamphetamine presumably for setting up the heroin deal.

Trial Court Opinion, 10/17/2019, at 1-3.

Brown was charged with multiple offenses related to the incident. As indicated above, on June 5, 2019, a jury convicted Brown of delivery of heroin and fentanyl, conspiracy to deliver heroin and fentanyl, and criminal use of communication facility.[2] On July 31, 2019, the court sentenced Brown as follows: (1) a term of five to ten years' incarceration for the delivery conviction; (2) a concurrent term of five to ten years' imprisonment for the conspiracy conviction; and (3) a consecutive term of two years' probation for the criminal use of communication facility conviction. Brown did not file post-sentence motions, but did file this appeal.[3]

---

[2] The jury found him not guilty of possession with intent to deliver heroin and fentanyl, possession of heroin and fentanyl, and possession of drug paraphernalia.

[3] On August 29, 2019, the trial court ordered Brown to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Brown complied with the court's directive on September 4, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 17, 2019.

Brown raises the following claim for our review:

Whether the deliberate destruction by an arresting officer of the only written police report prepared by Commonwealth's only eyewitness constitutes prosecutorial misconduct?

Appellant's Brief, at 4.

By way of background, Officer Apel, who took part in the drug transaction at issue, prepared a written statement regarding the incident. He provided it to his supervisor, Officer Bowers, who coordinated the drug transaction using a confidential informant. *See* N.T., 6/5/2019, at 49. Officer Bowers then prepared the criminal complaint and drafted the affidavit of probable cause, relying upon the report submitted by Officer Apel. *See id.*, at 76-77. Thereafter, Officer Bowers destroyed Officer Apel's report, which he stated was his general practice when preparing complaints in criminal cases. *See id.*, at 95.

During trial, Officer Apel testified Roberts gave Brown a small amount of drugs as payment for orchestrating the transaction. *See id.*, at 42. Officer Apel indicated there was nothing in the affidavit of probable cause that mentioned the additional drugs being handed to Brown. *See id.*, at 51. Officer Bowers also testified at the trial, stating that he could not recall whether Officer Apel's notes mentioned the additional drugs provided to Brown, and that the notes were used as "guidelines" and "reference." *Id.*, at 82, 95.

At the conclusion of the Commonwealth's case, counsel for Brown made an oral motion for acquittal, in which he relied on *Brady v. Maryland*, 373

U.S. 83 (1963),[4] and argued prosecutorial misconduct for failing to provide the defense with a copy of Officer Apel's report. Specifically, counsel asserted:

> We have an officer testifying. He presented -- he prepared a -- a typed report provided to Officer Bowers; and it was never provided … to defense.
>
> And what's really pertinent here is we have testimony that includes other facts that aren't in the final Affidavit which is the only report. I think they're compelled to provide the defense with any and all reports they have, and I believe it's a direct violation of ***Brady***.

***Id.***, at 93.

After hearing argument on the matter, the trial court permitted defense counsel to present any testimony he desired regarding the weight and credibility of the testimony of the two officers and the destruction of the report. ***See id.***, at 94-95. Defense counsel declined the court's offer.[5] ***See id.***, at 95. The court then denied Brown's motion, finding the matter did not rise to the level of prosecutorial misconduct. ***See id.***, at 96-97.

Brown now complains:

> The intentional destruction of this written police report prevented the defense from viewing the written account of the Commonwealth's only eyewitness. What makes this conduct egregious is the fact that the arresting officer went on to state that he destroys all such reports in all the cases he handles after he prepares the Affidavit of Probable Cause attached to each

---

[4] ***Brady*** provides that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ***Brady***, 373 U.S. at 87.

[5] Counsel also never requested the court to strike Officer Apel's testimony.

criminal complaint. The intentional destruction of written police reports on this case amounts to prosecutorial misconduct on the part of the Commonwealth.

***Id.***, at 13-14. Brown states defense counsel is allowed access to such statements so that counsel "may uncover inconsistencies between witnesses' pre-trial statements and his testimony at trial." ***Id.***, at 14, *quoting* ***Commonwealth v. Meo***, 524 A.2d 902, 905 (Pa. Super. 1987) (citation and quotation marks omitted). Moreover, he asserts that "defense counsel must be able to view the statement with the eyes of a trial advocate thus ensuring that the defense has a fair opportunity to cross-examine the witness." Appellant's Brief, at 15 (citation and quotation marks omitted). Brown concludes:

> [Here, t]he defense never had the opportunity to cross-examine Officer Apel using his written report because it was intentionally destroyed by a superior officer. This act actually creates a presumption that the report contained exculpatory evidence. The Commonwealth cannot rebut this presumption due to the fact that the report has been destroyed.

***Id.***

Brown's "destruction of Officer Apel's written statement" argument involves a purported violation under ***Brady***. "***Brady*** sets forth a limited duty, not a general rule of discovery for criminal cases." ***Commonwealth v. Paddy***, 15 A.3d 431, 451 (Pa. 2011) (citations omitted). The burden rests on the defendant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." ***Commonwealth v. Porter***, 728 A.2d 890, 898 (Pa. 1999).

In order to establish a **Brady** violation, the Pennsylvania Supreme Court has previously explained:

> "There are three components of a true **Brady** violation: [t]he evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."
>
> Pursuant to **Brady** and its progeny, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." However, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."

**Commonwealth v. Natividad**, 200 A.3d 11, 25-26 (Pa. 2019) (citations omitted).[6] Additionally, "[a] reviewing court is not to review the evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." **Commonwealth v. Dennis**, 17 A.3d 297, 309 (Pa. 2011) (citation omitted).

Here, the trial court found the following:

> Based upon the evidence elicited at trial including [Brown]'s own testimony this court determined that the record did not support any finding that Officer's [sic] Apel's notes which he prepared following the drug transaction contained any of what may be defined as material exculpatory evidence under **Brady v. Maryland**, 373 U.S. 83 (1963) such that failure to disclose the information to [Brown] constituted a due process violation. Additionally, nothing indicated that the notes of Officer Apel contained "potentially useful evidence" which might have

---

[6] **See** Pa.R.Crim.P. 573 (governing pretrial discovery in criminal cases).

exonerated [Brown] and which the police or prosecuting attorney in bad faith failed to preserve. ***Arizona v. Youngblood***, 488 U.S. 51 (1988); ***Illinois v. Fisher***, 540 U.S. 544 (2004); ***Commonwealth v. Snyder***, 963 A.2d 396 (Pa. 2009) ***See also***, ***Commonwealth v. Pickering***, 533 A.2d 735 (Pa. Super. 1987) (grant of mistrial not warranted due to destruction of undercover officer's notes). In this regard, no evidence was presented to find Officer Bowers' failure to preserve notes he used to construct the criminal complaint per his practice was done in bad faith. As stated, despite given the opportunity to present evidence on the issue at the time he had made the motion following presentation of the Commonwealth's case, [Brown] declined to do so. Consequently, as no evidence existed in the record that Apel's notes contained exculpatory or potentially useful evidence for the defense that had not been retained in bad faith - including that the notes were destroyed after a request for discovery had been made, or even in anticipation of such a request - this court determined that [Brown]'s motion for judgment of acquittal was without merit. Further, although the issue [Brown] raises for appellate review is whether the court erred in allowing Officer Apel to testify after he admitted destroying his report, [Officer] Apel testified he gave his notes to Officer Bowers and no motion to preclude Officer Apel from testifying or to strike his testimony had been made.

Trial Court Opinion, 10/17/2019, at 4-5. We agree with the court's analysis.

To the extent Brown raises a ***Brady*** violation, his argument is substantially deficient for several reasons. First, and of most importance, it is evident that Officer Apel's written statement was never in the Commonwealth's possession, and therefore, it did not have the opportunity to suppress the evidence rather than turning it over to the defense. ***See Commonwealth v. Roney***, 79 A.3d 595, 608 (Pa. 2013) ("The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution.") (citations and

emphasis omitted); ***Commonwealth v. McElroy***, 665 A.2d 813, 821 (Pa. Super. 1995) ("The Commonwealth is only required to produce evidence which is relevant *and* which is within its possession.") (italics in original).

Furthermore, we find ***Commonwealth v. York***, 465 A.2d 1028 (Pa. Super. 1983), and ***Youngblood*** instructive regarding the implication of Officer Bower's actions. In ***York***, an undercover police officer recorded details of her drug transactions with the defendant immediately following each purchase. The officer used the recordings to prepare her police report, and then erased the tapes.

At the preliminary and suppression hearings, the officer "did not have a comprehensive recollection of all the details surrounding the events leading to [the defendant]'s arrest[,]" and "found it necessary to rely upon the previously mentioned written police reports." ***Id.***, at 1030. The officer also "admitted that in making her official report she included only the details from her taped notes which she determined were relevant to the transaction." ***Id.***

The trial court suppressed the officer's preliminary hearing testimony, finding the "action of destroying her tape recorded notes was a complete usurpation of a judicial function in deciding what is admissible and that defense counsel would be severely hindered in their cross examination of Commonwealth witnesses due to their inability to review [the officer's] tape recorded notes*." **Id.*** In reversing the trial court's decision, a panel of this

Court concluded there was no evidence "the prosecutor suppressed or destroyed the tapes." *Id.*, at 1031. Moreover, the *York* Court opined:

> In the instant matter while we cannot approve the procedure by [the officer] which erased her recorded impressions, we do not agree that the action taken by the lower court was appropriate. [The defendant]'s right or opportunity to cross-examine the witnesses is not so severely affected by the absence of the tapes as to warrant the harsh sanction of the witnesses' suppression. [The defendant] still has the chance to fully cross-examine the witness regarding her recollections of the events giving rise to the arrest. [The defendant] can scrutinize [the officer]'s official report in any aspect, as to its contents and compilation, and explore the effect of the destruction of the tapes on the witnesses' credibility. The credibility of a witness is within the sole province of the finder of fact.

*Id.* (citation omitted).

In *Youngblood*, the police failed to properly preserve certain evidentiary samples in a sexual assault case. The defendant argued the lost evidence could have exonerated him. On review, the United States Supreme Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. The Supreme Court determined that while the actions of the police were negligent in the underlying matter, there was no due process violation.

Turning to the present matter, the trial testimony reveals Officer Bowers destroyed Officer Apel's statement after he prepared the criminal complaint in the matter because it was his general practice to do so. *See* N.T., 6/5/2019, at 95. Like in *York*, and contrary to Brown's argument, counsel for Brown was

given several opportunities to explore the effect of the destroyed statement on the officers' credibility and he declined to do so. Additionally, other than presenting a bald allegation of intentional destruction, Brown has not met his burden in establishing that the failure to preserve the statement was done in bad faith. ***See Youngblood***. Therefore, we cannot conclude the Commonwealth should be faulted for an independent action taken by Officer Bowers.

Second, Brown fails to explain how the destroyed statement was material and exculpatory. The testimony of both officers established the statement at issue was incorporated into the criminal complaint, and consequently, it could be readily considered cumulative evidence. ***See Pickering***, 533 A.2d at 736-737 (holding where police notes were substantially incorporated into the police report, they would have been merely cumulative of the report made available to defense counsel).[7]

Furthermore, at Brown's trial, Officer Apel's testimony regarding the evidence that was only included in his written statement (and not in the complaint) implicated Brown in drug possession rather than exonerated him. ***See*** N.T., 6/5/2019, at 42 (Officer Apel testified Roberts gave Brown a small amount of drugs as payment for organizing the transaction). Accordingly, Brown fails to demonstrate the statement was either material or exculpatory.

---

[7] ***See also Commonwealth v. Haber***, 505 A.2d 273, 278 (Pa. Super. 1986).

Third, to the extent Brown contends that pursuant to *Meo*, defense counsel had a right to access the statement at issue so that counsel "may uncover inconsistencies" between the officer's statement and his testimony at trial,[8] we find such a reliance is misplaced.

In *Meo*, the appellants argued the trial court erred in denying defense counsel access to a report prepared by a police officer that the officer reviewed before he testified at appellants' joint trial. *Meo*, 524 A.2d at 904. The court denied the defense's request "because the report contained only [the officer]'s account of the investigation, and did not contai[n] exculpatory or verbatim statements from witnesses." *Id.*, at 905. The *Meo* Court relied on a prior decision, *Commonwealth v. Robinson*, 324 A.2d 441 (Pa. Super. 1974), for the governing law regarding defense entitlement to view reports. The *Robinson* decision provided that relevant, pre-trial witness statements in the possession of the Commonwealth must be made available to the defendant, upon request, during the trial, and that rule extended to reports made by police officers who testify as witnesses. *Meo*, 524 A.2d at 904-905.

Turning to the present matter, as we noted above, the Commonwealth was never in possession of Officer Apel's statement. Accordingly, *Meo* is inapplicable to the case.

Furthermore, we note:

---

[8] *See* Appellant's Brief, at 14.

> Neither th[e Pennsylvania Supreme] Court, nor the United States Supreme Court, however, have ever held that ***Brady*** requires the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses. ***See Commonwealth v. Chambers***, 570 Pa. 3, 807 A.2d 872, 887 (2002) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.") (quoting [***United States v.***] ***Agurs***, 427 U.S. [97,] 109–10, 96 S.Ct. [2392,] 2400 [1976]).

***Commonwealth v. Lambert***, 884 A.2d 848, 856 (Pa. 2005).

Here, the crux of Brown's argument is that Officer Apel's notes might have yielded possible arguments in his defense regarding the credibility of the officers and that the destruction of the statement created a presumption that it contained exculpatory evidence. Nevertheless, such notions and assertions amount to mere speculation, which does not support a determination that the Commonwealth violated ***Brady***. Therefore, we conclude Brown's argument fails, and the trial court did not err by failing to grant his motion for acquittal based on prosecutorial misconduct.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/30/2020

- 13 -