450 Pa. Superior Ct. 574 (1996)
677 A.2d 842
COMMONWEALTH of Pennsylvania
v.
Truman Dallas BEAN, Appellant.
Superior Court of Pennsylvania.
Argued December 13, 1995.
Filed May 6, 1996.
*575 Gene P. Placidi, Erie, for appellant.
Daniel T. Reimer, Assistant District Attorney, Warren, for Commonwealth, appellee.
Before CAVANAUGH and JOHNSON, JJ., and CERCONE, President Judge Emeritus.
CAVANAUGH, Judge:
Allegations of sexual abuse of Adam Bean, appellant's eleven year old mildly retarded son, led to charges against appellant of involuntary deviate sexual intercourse, corruption of minors, indecent assault and incest. After a jury convicted appellant of these charges, the Honorable Paul H. Millin of the Court of Common Pleas of Warren County sentenced him to five to ten years imprisonment.[1] Appellant appeals from the judgment of sentence, contending that the trial court erred in admitting hearsay statements at trial under a statutory exception to the hearsay rule. After carefully reviewing the record, we vacate the judgment of sentence, reverse and remand for a new trial.
The relevant facts which may be deduced from the record are as follows. Mr. Bean married Adam's mother, Dawn *576 Keener, in September, 1979. They divorced approximately eight years prior to trial. Adam, the only child of their marriage, was diagnosed as mildly retarded and epileptic. Under a custody agreement, Adam lived with his mother, who was remarried in June, 1993. He visited his father from nine a.m. to four p.m. on Sundays. By 1993, Adam, who wanted to spend more time with his father, started staying overnight at his father's house on many weekends.[2]
The alleged incident of sexual abuse occurred on Saturday, June 26, 1993. Adam's mother testified at trial to the following sequence of events which occurred after Adam returned to her house from spending the weekend at his father's house. Adam rode his bike for about thirty minutes. After riding his bike, he complained to his mother that his "butt hurt." He initially told his mother that the pain resulted from his bike ride. His mother recommended that he take a shower. After taking a shower, Adam asked his mother to examine his buttocks. His mother noticed a round red mark around the anal area and again asked him how he hurt it. He first replied that he hurt it on his bike. He then started crying and told her that his father put his finger in his butt.
Later that evening Adam's mother overheard him telling his stepfather, Randy Keener, that his father "put his wiener in his butt." They took him to the emergency room at Warren General Hospital that evening. At approximately 10:45 p.m. Charlotte Uber, a casework supervisor from the Department of Human Services, spoke with Adam at Warren General Hospital. Charlotte Uber testified at trial that she and Adam were drawing pictures when Adam turned to her and asked, "did you know that my dad put his wiener in my butt?" He then said, "Dad touched my wee-wee and I told him I didn't like it."
On Monday, July 28, 1994, Adam's family doctor, David McConnell, Jr., called Connie Zaffino, also a caseworker at *577 Warren County Child and Youth Services, and asked her to speak with Adam. She testified at a preliminary hearing that Adam told her that his father put his wiener in his butt, that his father put neosporin on it to make it stop hurting, but that it didn't stop hurting.
Adam also spoke with his family doctor of eight years on Monday. Doctor McConnell testified regarding this interview as follows:
He [Adam] told me that while he was visiting at his father's that an incident occurred in the bedroom in which his father told him to take his pants off and underpants. He used the word "wiener" for penis and he said that his father touched his wiener and made him touch his father's wiener. He said that his father's wiener got big and that he put it in his butt, he said that he pushed it in and out and it hurt a lot and that some white stuff came out.
The Commonwealth requested a preliminary hearing to establish whether the statements made by Adam about the sexual abuse to Dawn Keener, Randy Keener, Charlotte Huber, Doctor David McConnell, Jr. and Connie Zaffino were admissible at trial pursuant to 42 Pa.Cons.Stat.Ann. § 5985.1, the tender years exception to the hearsay rule. Section 5985.1 provides, in pertinent part:
General Rule  An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:
(1) The court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability.
(2) The child either:

*578 (i) testifies at the proceeding; or
(ii) is unavailable as a witness and there is corroborative evidence of the act.
Id.
Instantly, after conducting an in camera hearing, the trial court deemed Adam incompetent and, therefore, unavailable to testify as a witness. See Commonwealth v. Hanawalt, 419 Pa.Super. 411, 615 A.2d 432, 433 (1992) (child incompetent to testify is "unavailable" for purposes of § 5985.1). After the in camera hearing, the trial court also determined that the statements to Dawn Keener, Randy Keener, Charlotte Huber and Doctor David McConnell, Jr. were relevant and contained a "sufficient indicia of reliability" to be admitted at trial.[3] The trial court further found that the statements to Connie Zaffino did not meet the requirements for admissibility under § 5985.1.
On appeal, appellant's sole claim is that the trial court improperly determined these statements to contain a "sufficient indicia of reliability," particularly since the trial court also deemed Adam, the declarant, incompetent as a witness. After careful review, we find that the trial court erred in admitting these statements under the tender years exception to the hearsay rule.
Hearsay is generally inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. Commonwealth v. Smith, 436 Pa.Super. 277, 286, 647 A.2d 907, 911 (1994). In Commonwealth v. Haber, 351 Pa.Super. 79, 85, 505 A.2d 273, 275 (1986), we noted:
The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact. Exceptions have been fashioned to accommodate certain classes of *579 hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule.
Id.
Any statement admitted under § 5985.1 must possess "sufficient indicia of reliability," as determined from the time, content and circumstance of its making. Therefore, this statute contemplates the inherent untrustworthiness of hearsay evidence and requires a firm foundation for any hearsay admitted under its terms. Moreover, this Court determined that properly admitted evidence under this hearsay exception possesses "particularized guarantees of trustworthiness" and, therefore, does not violate the accused's right to confront witnesses under the state or federal constitution.[4]
*580 In Commonwealth v. Hanawalt, 419 Pa.Super. at 422, 615 A.2d at 438, this Court looked to the United States Supreme Court's decision in Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) to determine when an out-of-court statement contains the requisite "particularized guarantees of trustworthiness" to be admissible although the declarant does not testify at trial. The Hanawalt court stated:
Although the Supreme Court declined to endorse a mechanical test for determining when hearsay statements made by a child witness in child sexual abuse cases possess "particularized guarantees of trustworthiness" under the Confrontation Clause, it did provide that the main consideration in making such a determination is whether the child declarant was particularly likely to be telling the truth when the statement was made. The Supreme Court then identified a non-inclusive list of factors to consider when making such a determination. Such factors include, but are not limited to: 1) the spontaneity and consistent repetition of the statement(s); 2) the mental state of the declarant; 3) the use of terminology unexpected of a child of a similar age; and, 4) the lack of motive to fabricate.
Id. (citing Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)).
In this case, the trial court found Adam to be incompetent to testify at trial because he could not distinguish between truth and falsity. The trial court expounded its reason for deeming Adam incompetent to testify at trial in its opinion dated February 7, 1995, stating that Adam attempted to please adults to the extent that he stated what he believed the adults wanted to hear. In deeming Adam incompetent to testify, the trial court also relied on Adam's statement that it is sometimes better to lie than to tell the truth because sometimes the truth hurts.
In its opinion discussing the admissibility of Adam's statements, the trial court analyzed the individual statements as follows:

*581 Next, the Court must determine whether the time, content and circumstances of the statements provide sufficient indicia of reliability. The alleged assault took place on Saturday, June 26, 1993, in the evening. On Sunday, when the child was returned to his mother, shortly after returning home he made the complaint that his butt hurt and thereafter disclosed to his mother and his stepfather what had occurred. The Court heard the testimony from the mother as to the nature of the questioning which occurred. The questioning was non-accusatory and non-suggestive in nature. This was the first disclosure made by the child of a traumatic event which had occurred only the prior evening. The child spoke in terms which were consistent with his normal speech. Therefore, the Court finds that there is sufficient indicia of reliability and the statement made to Dawn Keener and her husband on Sunday, June 27, 1993, is admissible.
Following the statement Mrs. Keener made arrangements to take the child to the emergency room at the hospital. A few hours elapsed as Mrs. Keener called the hospital and told them the circumstances and wanted to await a time when the emergency room would not be crowded. The statement to Charlotte Huber was made at the hospital in an interview where the child drew a picture of his father and discussed the incident. The time that elapsed between the disclosure to his mother and the interview at the hospital is not significant in amount nor occurrence because the mother testified that there was very little further discussion with the child following his initial disclosure to her. The child's statement to Charlotte Huber at the hospital was consistent with that made to the mother and stepfather; therefore, the Court finds there is sufficient indicia of reliability and the statement is admissible.
The statement to Dr. David McConnell, Jr., and Connie Zaffino was made at Dr. McConnell's office on Monday, June 28. It is significant that Dr. McConnell had been the child's doctor for some time and that the child apparently trusted the doctor and understood that he was with the *582 doctor to receive medical treatment. The statement to the doctor and Connie Zaffino was consistent with the statements previously made. The Court finds there is sufficient indicia of reliability and the statement is admissible.
The Commonwealth seeks to introduce an additional statement made by the child to Connie Zaffino at an interview in here office at the Department of Human Services on June 30, 1993. There was no testimony as to whether or not there had been additional questioning of the child during the period between the statement of Dr. McConnell and the statement of June 30, and the statement is removed in time from the occurrence of the act by four days. The Court therefore finds that the Commonwealth had not met its burden of proof to show sufficient indicia of reliability, and the Court holds the conversation of June 30 between the child and Connie Zaffino is not admissible.
Trial Court Opinion, Feb. 9, 1995.
Although the trial court made a determined effort to evaluate the hearsay testimony under § 5985.1, the court's inquiry was inadequate since it failed to consider the effect of the child's incompetency upon declarations to the witnesses.[5] Also, since the court found that Adam has a tendency to tell adults what he believes they want to hear, the court should have more scrupulously inquired as to whether or not the child was subjected to any suggestive interrogation which may have led the child to answer in conformity with the interrogator's expectations. Therefore, we grant appellant's request for a new trial, so that the trial court can undertake a more searching evaluation under § 5985.1.[6]
*583 Judgment of sentence vacated, order reversed and case remanded for new trial. Jurisdiction relinquished.
NOTES
[1] All charges merge with involuntary deviate sexual intercourse for sentencing purposes.
[2] Adam's mother and father both agreed to this arrangement.
[3] In a later opinion, dated June 20, 1995, the trial court also notes that one of the statements, presumably Adam's statement to Dr. McConnell, may be admissible under the treating physician exception to the hearsay rule.
[4] In Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) the United States Supreme Court set forth the standard for admitting out-of-court statements made by unavailable witnesses, as follows:

We noted[, in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)] that the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." ... "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment established a rule of necessity. In the usual case ... the prosecution must either produce or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." ... Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate `indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." (Citations omitted.)
Id.
In Commonwealth v. Hanawalt, supra, this Court further noted:
[B]ecause the statute [§ 5985.1] is a relatively new creation in this Commonwealth, it is not accorded the longstanding judicial and legislative experience of a firmly rooted hearsay exception. Thus, for 42 Pa.C.S. § 5985.1 to pass muster under the Confrontation Clause, the evidence admitted under section 5985.1 must possess "particularized guarantees of trustworthiness" as adduced from the totality of the circumstances surrounding the out-of-court statement made by the child victim. The language of 42 Pa.C.S. § 5985.1, specifically "(1) The court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability" (emphasis added), clearly fulfills these mandates. Accordingly, we find that 42 Pa.C.S. § 5985.1 mirrors the requirements asserted by Ohio v. Roberts, supra. 419 Pa.Super. at 418, 615 A.2d at 435.
[5] In Idaho v. Wright, supra, the Supreme Court refused to find that a child's out-of-court statements are per se unreliable based on the fact that the child is deemed incompetent to testify at trial. Nevertheless, a child's incompetency at time of trial may be relevant to determining whether the child's earlier statements possessed "particularized guarantees of trustworthiness."
[6] We note that some of the statements may be admissible under the excited utterance exception or the treating physician exception to the hearsay rule in the new trial. See Commonwealth v. Hanawalt, 419 Pa.Super. 411, 615 A.2d 432, 433 (1992).