## Commonwealth v. Allen

C.P. of Greene County, no. 223 Criminal 1997.

*David F. Pollock,* for Commonwealth.
*David DeFazio,* for defendant.

GRIMES, *P.J.,* October 13, 1998—The defendant, Michael Joseph Allen, was charged with one count of aggravated indecent assault and one count of indecent assault in connection with an incident alleged to have occurred on August 5, 1996 in Franklin Township, Greene County, Pennsylvania. He is alleged to have had indecent contact with his 3-year-old daughter, Melissa Sue Allen. These accusations were made as a result of the victim's alleged statements to her mother, Barbara Grimm, and later, to caseworker Margaret Zipf-McCracken of Greene County Children and Youth Services, court-appointed psychologist Dr. Susan Nathan Ph.D., and Mary Ann Eitner, Greene County victim-witness coordinator.

The Commonwealth filed a motion to admit the victim's statements at trial under the exception to the hearsay rule which governs the admissibility of statements describing abuse made by children age 12 or younger. 42 Pa.C.S. §5985.1. After a hearing and the testimony of the appointed psychologist, the court denied the Commonwealth's motion by order dated September 24, 1997, and the Commonwealth appealed to the Superior Court, certifying in its notice of appeal that the order would terminate or substantially handicap the prosecution of the case under Pa.R.A.P. 311(d). The Superior Court held that the trial court abused its discretion by ruling without considering the Commonwealth's DNA evidence, and vacated the trial court's order and remanded

for the court to hear the Commonwealth's DNA evidence and then reconsider its decision under the statute. It is important to note that the Commonwealth did not offer its DNA evidence at the hearing before the trial court.

A hearing on remand was held on August 20, 1998, and the Commonwealth presented the testimony of Michael Kurtz of the Pennsylvania State Police laboratory in Greensburg, who was recognized by the court as an expert in DNA interpolation. Mr. Kurtz tested three DNA samples, those being dried blood samples from both the child and the suspect and a seminal stain from the child's underwear. (See Commonwealth exhibit 2.) Based upon those tests, Mr. Kurtz testified that the defendant was a possible producer of the stain on the child's underwear and that the defendant cannot be excluded as a provider of the DNA sample. Mr. Kurtz also testified that it was possible that the defendant was not the producer of the stain, and did not render an opinion as to the percentage or ratio of the probability of inclusion or exclusion of the defendant as the producer of the stain. For reasons discussed hereafter, it is significant that the stain was only on the underwear and not on or about the child, although she was immediately taken to the local hospital for an examination where a "rape kit" was prepared and given to the police for laboratory analysis.

The hearsay statements sought to be admitted by the Commonwealth must be analyzed under the factors enumerated in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), as adopted by the Pennsylvania Superior Court in *Commonwealth v. Hanawalt,* 419 Pa. Super. 411, 422, 615 A.2d 432, 438 (1992). These factors include "(1) the spontaneity and consistent repetition of the statement(s); (2) the mental state of the declarant; (3) the use of terminology unexpected of a

child of similar age; and (4) the lack of motive to fabricate." *Hanawalt,* 419 Pa. Super. at 422, 615 A.2d at 438. The *Hanawalt* court opined that under an *Idaho* analysis, the most important factor in determining whether to admit a statement is "whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* The circumstances of the present case indicate otherwise. At the outset of this case, the court ordered that no one speak with the alleged victim concerning these allegations and that she be evaluated by an independent party to test the reliability of her statements concerning the allegations of abuse. The alleged victim was evaluated by Dr. Susan Nathan Ph.D. of the Children's Hospital of Pittsburgh, Family Intervention Center, who testified at the initial hearing on the matter. Her independent evaluation of the child revealed that the child was unable to differentiate between real and unreal events. She tested the child's ability to distinguish between that which was real and unreal by presenting the child with a series of examples such as "you and mommy came here today in a car" and the child had to state whether that really happened or not. (Hearing transcript, 20.) Dr. Nathan gave an example to Melissa that when she was playing in the playroom, "a clown came in and blew up a balloon and gave it to you." (H.T., 20.) This event did not in fact happen but the alleged victim was unable to differentiate between whether this really happened or not. The professional opinion of the independent psychologist was that it was "not possible to determine whether Melissa has been sexually abused by her father." (Commonwealth exhibit 2, pp. 4-5.) Dr. Nathan opined that the allegations were not "sufficiently consistent, clear and detailed to render her disclosure credible at the present time." (Commonwealth exhibit 2, p. 5.) In

fact, the child was unable to demonstrate to Dr. Nathan with the use of anatomically correct dolls the acts she alleged occurred.

The statements of the child are further called into question by the motive to fabricate which exists since the mother and the defendant were involved in a custody dispute at the time these allegations were made. Further, the mother, when contacted by Trooper James A. McElhaney, P.S.P., on September 26, 1996, stated that she did not wish to continue with the investigation since she and the defendant had reached a custody agreement, and the continuation of the investigation would not be in the best interest of the child. (Report of Tpr. James A. McElhaney, P.S.P., October 21, 1996.) The mother signed a written statement witnessed by Trooper McElhaney requesting the Pennsylvania State Police to "stop any further investigation" of the alleged incident and stating that "my child does not intend to testify in any court of law as to the facts of the case nor make any identification of anyone accused or charged." (See statement of Barbara Grimm, September 26, 1996, attached to report of Tpr. James A. McElhaney, P.S.P., October 21, 1996.)

Barbara Grimm, the mother, not only had a motive to fabricate these allegations but she also had an opportunity to fabricate the physical evidence. She stated to Trooper McElhaney during an interview on November 22, 1996 that she and Melissa had stayed with the defendant at his residence in Ohio for approximately six days prior to the alleged incident and that during this stay, she and the defendant engaged in one episode of oral sex. (See report of Tpr. James A. McElhaney, P.S.P., November 25, 1996.) This sexual act provided the mother with the means to collect physical evidence to support false allegations to aid her in the custody dispute with her

husband. Further, the mother informed Tpr. Brian Shuba, P.S.P., on August 12, 1996 that she had made reports of similar incidents involving her daughter and the defendant to the Delaware County Police in Columbus, Ohio; however, no corroborating evidence of these reports has been presented. (See report of Tpr. Brian Shuba, P.S.P., August 12, 1996.) Yet, despite the past allegations, the mother requested the state police to terminate the investigation when she and the defendant reached a custody agreement.

The foregoing factors cloak the alleged victim's statements with a shroud of unreliability and, when combined with the findings of the independent psychologist concerning her inability to distinguish real and unreal events, create an indicia of unreliability which makes the child's hearsay statements completely unreliable.

The Commonwealth argues that whether the allegations of abuse were fabricated and the physical evidence planted are questions for the trier of fact. However, the trier of fact may only base its decision upon evidence that is reliable, and the purpose of excluding hearsay is to prevent unreliable and untrustworthy testimony from coming before the jury. See *Commonwealth v. Bean,* 450 Pa. Super. 574, 677 A.2d 842 (1996), citing *Commonwealth v. Haber,* 351 Pa. Super. 79, 505 A.2d 273 (1986). The statements at issue in the present case are hearsay and they may be excepted from the exclusion of hearsay pursuant to statute only when "the time, content and circumstances of the statement provide sufficient indicia of reliability." 42 Pa.C.S. §5985.1(a)(1). The circumstances of the statements at issue in this case not only cause the statements to lack reliability but, in fact, tend to prove the statements are unreliable. The Commonwealth's argument that the DNA evidence indicates the

defendant cannot be excluded as a source of the seminal stain makes the statements more reliable and trustworthy is an exercise in bootstrapping. The only evidence that the seminal stain containing the defendant's DNA was placed on the child's underwear, and not on her person, as a result of sexual contact between the defendant and the alleged victim is contained in the hearsay statements of the alleged victim. The hearsay statements of a child who cannot distinguish between real and unreal events and who is at the center of a custody battle are the only evidence as to how the DNA came to be in the place it was found. Thus, we are presented with a troublesome situation in which the hearsay statements themselves are being used to establish the source of the DNA which is being offered to bolster the trustworthiness of the hearsay statements. This type of circuitous reasoning is unacceptable in law. The DNA evidence that the defendant cannot be excluded as the producer of the seminal stain on the alleged victim's underwear has no value unless the alleged victim's hearsay statements concerning how the stain was deposited are trustworthy. Thus, the DNA itself does not lend trustworthiness to the statements and, given the strong motive to fabricate which is present in this case along with the mental state of the child at the time she made the statements (her inability to distinguish between fact and fiction), the statements lack the indicia of reliability required by the statute and therefore are inadmissible. As stated above, it is noteworthy that the DNA evidence does not give a percentage probability of the defendant being the source of the seminal fluid but rather is interpolated in terms of not being able to exclude the defendant as a source. Thus, the Commonwealth is asking the court to admit the hearsay statements of a young child who is unable to tell the difference between

events that really happened and those that did not based upon scientific evidence that cannot be quantified as to a percentage or ratio. The circumstances of the present case are not those which the legislature contemplated when creating this exception to the hearsay rule. Rather, the circumstances of this case are a textbook example of the kinds of unreliable statements the hearsay rule was designed to exclude. The Pennsylvania Superior Court in *Commonwealth v. Bean,* 450 Pa. Super. 574, 579, 677 A.2d 842, 844 (1996), reversed the admission by a trial court of statements under 42 Pa.C.S. §5985.1, opining that the "statute contemplates the inherent untrustworthiness of hearsay evidence and requires a firm foundation for any hearsay admitted under its terms." Such a firm foundation is lacking in the present case. Therefore, based upon the foregoing, the statements sought to be admitted by the Commonwealth are inadmissible under 42 Pa.C.S. §5985.1.

## ORDER

And now, October 13, 1998, upon consideration of the evidence presented at the hearing on remand and 42 Pa.C.S. §5985.1, it is ordered that the Commonwealth's motion for admission of certain hearsay statements pursuant to 42 Pa.C.S. §5985.1 is denied and the Commonwealth is prohibited from introducing the statements Melissa Sue Allen made to Barbara Grimm, her mother; Margaret Zipf-McCracken, caseworker for Greene County Children and Youth Services; Mary Ann Eitner, victim-witness coordinator; and Dr. Susan Nathan Ph.D., providing, however, that the testimony of Dr. Nathan may be introduced following an offer of proof for other matters.