**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Owen CESAR, Appellant.**

Superior Court of Pennsylvania.

Filed Nov. 14, 2006.

Submitted Jan. 17, 2006.

**980** ■ 

Andrea A. Mertz, Reading, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: STEVENS, BENDER, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Berks County on April 25, 2005, following Appellant's conviction by a jury of indecent assault,[1] corruption of minors,[2] endangering the welfare of a child,[3] and indecent exposure.[4] We affirm the judgment of sentence.

¶ 2 The relevant facts of this case as revealed at trial are as follows: During the summer of 2003, I.C. ("Victim"),[5] who was five years old at the time, spent the August 15 to August 17 weekend with her father, Appellant. On one of those evenings, Victim fell asleep on a sofa in the living room and was awakened thereafter by noises outside the house. She proceeded upstairs to Appellant's bedroom and asked to sleep with him. While asleep in his bed, she was awakened when Appellant pulled down her pajamas and underwear. She asked what he was doing, and he responded, "my pee pee hurts." N.T. 1/12/05 at 12. Appellant inserted his penis into Victim's anus, *id.* at 11, at which time she told her father that it hurt. Following the incident, Father told Victim not to tell anyone what had occurred. She then left the bedroom and went to sleep in her own room.

¶ 3 When Victim got home from her visit with Appellant, she informed her mother, A.B., of the incident. A.B. immediately contacted the police, which led to Appellant being charged in connection therewith.

¶ 4 On December 8, 2003, the Commonwealth filed a Notice of Intention to Present Evidence Pursuant to the Tender Years Hearsay Exception under 42 Pa. C.S.A. § 5985.1. On April 16, 2004, Appellant filed a motion challenging the admissibility of this hearsay testimony and seeking a competency hearing in the matter. A pretrial hearing was held on June 2, 2004, at which time various issues, including the issue of Victim's competency, were explored. By order issued June 7, 2004, the court, noting that it had granted Appellant's motion for a hearing under the Tender Years Exception and motion for a competency hearing, *inter alia,* denied Appellant's motion to exclude the testimony. An additional pretrial hearing was held on January 10, 2005, at which time, *inter alia,* the matter of Victim's competency again was explored via the testimony of Valerie Burkert, a victim-witness coordinator with the Berks County District Attorney's Office.

---

**1.** 18 Pa.C.S.A. § 3126.

**2.** 18 Pa.C.S.A. § 6301.

**3.** 18 Pa.C.S.A. § 4304.

**4.** 18 Pa.C.S.A. § 3127.

**5.** We note that various documents in the record erroneously refer to Victim as A.C.

¶ 5 Following a jury trial held on January 12 and 13, 2005, Appellant was found guilty of indecent assault, corruption of minors, endangering the welfare of a child, and indecent exposure.[6] A Megan's Law hearing was held on April 22 and 25, 2005, after which Appellant was found to be a sexually violent predator. He was sentenced to a one (1) to five (5) year term of imprisonment, followed by a fifteen (15) year term of probation.[7] Appellant filed post-sentence motions, which the court denied by order dated May 6, 2005. He then filed the present appeal.[8]

¶ 6 Herein, Appellant raises the following questions for review:

A. DID NOT THE TRIAL COURT ERR IN ADMITTING THE TESTIMONY OF THE UNAVAILABLE CHILD–WITNESS?

B. IS NOT THE TENDER YEARS HEARSAY EXCEPTION UNCONSTITUTIONAL AND DID NOT THE COURT ERR IN ADMITTING TESTIMONY THAT DENIED APPELLANT THE RIGHT OF CONFRONTATION PURSUANT TO *CRAWFORD V. WASHINGTON?*

C. DID NOT THE COURT ERR IN ADMITTING THE TESTIMONY OF THE CHILD–WITNESS'S MOTHER AND THE CHILDREN AND YOUTH SERVICES REPRESENTATIVE?

D. DID NOT THE TRIAL COURT ERR IN ADMITTING DETECTIVE YEICH'S TESTIMONY WHEN HIS TESTIMONY WAS NOT SUBJECTED TO A 'TENDER YEARS' HEARING TO ESTABLISH ITS RELIABILITY?

E. DID NOT THE TRIAL COURT ERRONEOUSLY ADMIT THE TAINTED TESTIMONY OF THE CHILD–WITNESS?

F. WAS NOT THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?

Brief of Appellant at 6 (answers of the trial court and suggested answers omitted).

■ ¶ 7 The first five issues raised by Appellant deal with alleged errors made by the trial court with regard to the admission of evidence. Accordingly, we note that the admission of evidence is within the sound discretion of the trial court, and decisions thereon will be reversed only upon a showing of an abuse of discretion. *Commonwealth v. Reid,* 571 Pa. 1, 34, 811 A.2d 530, 550 (2002).

■ ¶ 8 First, Appellant claims that the trial court erred in admitting the testimo-

6. The trial court granted Appellant's motion for Judgment of Acquittal with regard to charges of involuntary deviate sexual intercourse and incest.

7. Appellant received the one (1) to five (5) year term for the charge of indecent assault, and a five (5) year probationary term for each of the remaining offenses. This sentence was ordered to run consecutive to the five (5) to ten (10) year sentence imposed by the court on March 3, 2005, in connection with Count 1, Rape, in docket 5600/03. We add, however, that on August 4, 2005, the trial court granted Appellant's post-sentence motion on 5600/03, which thereby vacated his convictions and sentence, and granted him a new trial on the 5600/03 charges. Based thereon, on September 13, 2005, Appellant filed a petition for remand seeking a new Megan's Law Hearing. Finding that the issues before us involve neither the manner nor length of sentence, we deny Appellant's petition at this time. We note, however, that should 5600/03 be resolved in Appellant's favor, he may renew his request for a rehearing on his designation as a sexually violent predator. In the event the Commonwealth prevails in connection with 5600/03, it will be unnecessary to review Appellant's sexually violent predator status.

8. Pursuant to the court's order to do so, Appellant filed a concise statement of matters complained of on appeal, to which the court issued a 1925(a) opinion in response.

ny of Victim in that she was unavailable within the purview of Pa.R.E. 804(b)(3). The subsection of Rule 804 to which Appellant refers and quotes is actually Rule 804(a)(3), which provides: " 'Unavailability as a witness' includes situations in which the declarant: ... testifies to a lack of memory of the subject matter of the declarant's statement[.]" Pa.R.E. 804(a)(3). Appellant argues that Victim's lack of memory as evidenced by her testimony at both the pre-trial hearing and trial rendered her unavailable.

¶ 9 The trial court addressed Appellant's claim in this regard as follows:

> For the declarant to be unavailable the failure to remember must be present throughout trial. *See Commonwealth v. Knaub*, 556 Pa. 340, 728 A.2d 909, 910 n. 3 (1999) (A child victim of sexual assault had testified that her father had done bad things but could not remember any precise acts was determined by the court to be unavailable.) In this case, [Victim] testified at trial. She testified that her daddy 'put his pee pee in my private', and that her private was her bottom. [Victim] remembered the precise acts and could described [sic] those acts relatively well for her age. Therefore, [Victim] was available.

Trial Court Opinion filed 7/18/05 at 4.

¶ 10 A review of the record reveals that although Victim's answer to a number of questions posed to her concerning the alleged incident was, "I forgot," *See, e.g.*, N.T. 1/12/05 at 12–13, in view of Victim's responses regarding the time and place of the incident, and her feelings and actions before, during the course thereof, and following the incident, we find that the trial court did not abuse its discretion in determining that Victim was not an unavailable witness pursuant to Rule 804(a)(3).

■ ¶ 11 Appellant's next three contentions deal with the trial court's admission of testimony pursuant to the tender years hearsay exception. Specifically, Appellant argues that the admission of the testimony of A.B., Victim's mother, Children and Youth Service Representative William Condron, and Detective Thomas Yeich violated his constitutional right under the Confrontation Clause of the Sixth Amendment, pursuant to the dictates of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree.

Hearsay is generally inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. In *Commonwealth v. Haber*, 351 Pa.Super. 79, 85, 505 A.2d 273, 275 (1986), we noted:

> The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact. Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule.

*Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842, 844 (1996) (citations omitted).

■ ¶ 12 "The Tender Years Statute allows statements made by a child victim of sexual assault to be admitted into evidence, if the statements are relevant and sufficiently reliable." *Commonwealth v. Lyons*, 833 A.2d 245, 255 (Pa.Super.2003). This exception is set forth in 42 Pa.C.S.A. § 5985.1, which states, in relevant part, as follows:

> **(a) General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on

the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a).

¶ 13 In the case *sub judice*, Appellant argues that the hearsay statements of Victim as testified to by A.B., Mr. Condron, and Detective Yeich should have been excluded pursuant to *Crawford, supra*, due to, as argued above, the unavailability of Victim and, thus, Appellant's inability to cross-examine her concerning her statements. In *Crawford*, during the bench trial of her husband for the stabbing of another individual, the trial court allowed the prosecution to offer statements previously made by Crawford's wife, a witness to the stabbing, who was deemed unavailable as a trial witness due to marital privilege. The statements were made during an interrogation of Crawford's wife at the police station, and were offered by the prosecution to rebut Crawford's claim that he acted in self-defense. On appeal, the Washington Supreme Court determined that due to the trustworthiness of the statements in question, Crawford's constitutional right to confrontation was not violated.

¶ 14 Following the grant of *certiorari* by the United States Supreme Court, the Court examined the purpose behind the Confrontation Clause and noted that such Clause was fashioned to eliminate *ex parte* examinations of suspects and witnesses prior to trial and admissions of these examinations into the record at a criminal trial. The Court held that, when the prosecution seeks to introduce testimonial out-of-court statements into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires "unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. The Court noted, however, that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 (citation omitted). Finding that Crawford did not have an opportunity to previously cross-examine his wife, the Supreme Court reversed and remanded for further proceedings.

¶ 15 The facts in the present case are clearly distinguishable from those in *Crawford*. As discussed above, Victim was not unavailable within the purview of Pa.R.E. 804(a)(3). In addition, a review of the record reveals that Appellant was given the opportunity to cross-examine Victim concerning the incident in question at both the pre-trial hearing and trial. Therefore, Appellant was not denied his constitutional right to confront Victim. In that the dictates of *Crawford* were not violated, we find that the trial court did not err in admitting the hearsay statements of Victim under the Tender Years Exception.[9] Thus, Appellant's three claims predicated on this basis are without merit.

■ ¶ 16 Appellant's fifth contention is that the trial court erred in admitting the tainted testimony of Victim. In this regard, he argues that "[t]he clear and convincing testimonial evidence of [Victim] disclosed that she had been improperly

---

9. At this juncture, in that the issue is not before us, we need not reach the question of whether 42 Pa.C.S.A. § 5985.1(a)(2)(ii) violates the dictates of *Crawford*.

coached by her mother, the Assistant District Attorney and the victim/witness coordinator employed by the District Attorney's Office. The [Victim's] statements indicated the presence of significant taint." Brief of Appellant at 33–34 (emphasis omitted).

¶ 17 In *Commonwealth v. Delbridge*, 578 Pa. 641, 855 A.2d 27 (2003), the Supreme Court explained that:

> The core belief underlying the theory of taint is that a child's memory is peculiarly susceptible to suggestibility so that when called to testify a child may have difficulty distinguishing fact from fantasy. Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify.

*Id.* at 654–655, 855 A.2d at 34–35 (internal citations omitted).

¶ 18 After determining that an inquiry into the subject of taint should occur within a competency hearing, the Court stated:

> In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption.... [A]s with all questions of competency, the resolution of a taint challenge to the competency of a child witness is a matter

addressed to the discretion of the trial court.

*Id.* at 664–665, 855 A.2d at 40–41 (internal citations omitted).

¶ 19 A review of the transcript from the June 2, 2004 pretrial hearing reveals that during the direct examination of Victim, she was questioned concerning the alleged incident that transpired with Appellant over the weekend in question. After Victim indicated that, following the incident, she informed her mother thereof, she was asked what she remembered telling her mother. Victim responded, "I don't know." N.T. 6/2/04 at 11. The following exchange then transpired:

Q [Assistant District Attorney, Adam Bompadre, Esquire] You don't know. All right. Is it because you don't remember or because you are afraid to say it to the Judge?

A [Victim] I'm afraid.

Q I understand that and that's why there's nobody else in the courtroom that doesn't need to be here. Do you remember talking to me at the other judge's office last time we came to court? Okay. And I'm sorry, you need to answer yes or no. Do you remember talking to me that day?

A Yes.

Q Okay. And do you remember when you came over to me and you whispered in my ear and you told me what happened? Do you remember that, yes, no? You have to say yes or no?

A Yes.

Q Okay. What I need you to do is to tell the Judge what happened that day?

A I'm afraid to.

Q I understand but you have to tell the Judge, Honey, it's okay.

A He put his—I can't.

Q Do you need a couple minutes, Honey? Okay.

THE COURT: Why don't we take a break for a couple of minutes and see if we can go in a couple of minutes.

*Id.* at 11–12.

¶ 20 A recess was declared from 4:26 p.m. until 5:14 p.m., during which time Victim, *inter alia,* spoke with Valerie Burkert, who, as noted *supra,* was a victim-witness coordinator with the Berks County District Attorney's Office. When the proceeding resumed, Victim conveyed to the court that, "My daddy put his you know what into my you know what." *Id.* at 13. When asked to explain, she responded, "Daddy's front. He put that into my back." *Id.* She went on to state that Appellant's front was his "pee-pee" and her back was where she pooped. *Id.* at 14.

¶ 21 On cross-examination, Victim was asked if she was telling her story because she was able to remember or because she talked to other people about her story. She responded, "I remember it and I talked to other people about it." *Id.* at 20. With regard to her mother and the Assistant District Attorney, Victim stated that she discussed her story with these individuals. *Id.* at 21, 28. Victim specifically testified that she and her mother talked about her story prior to court that day. Victim was asked, "And were there parts of your story that you had forgotten that your mom actually helped you—helped you remember?" *Id.* at 30. To this question, Victim responded, "No, I did it myself." *Id.*

¶ 22 Victim also was asked the nature of her conversation with Ms. Burkert during the recess. Although Victim indicated that she went over her story with Ms. Burkert, because she was having trouble remembering it, *Id.* at 31, Victim twice testified that Ms. Burkert told her she was strong and smart, and could do it. *Id.* at 29, 32. Also, upon questioning as to whether she would have been able to remember her story absent her meeting with Ms. Burkert at the recess, Victim responded that she would have been able to do so. *Id.* at 31.

¶ 23 We note that, although Victim also testified that, following the break in the proceeding, she was able to remember what happened with Appellant because Ms. Burkert helped her remember,[10] *Id.* at

---

10. Appellant contends that, "[d]uring the approximate 50 minute break, [Victim and Ms. Burkert] discussed the 'story' that [Victim] was to tell the court." Brief of Appellant at 35. At the January 10, 2005 pretrial hearing, Ms. Burkert described the nature of her meeting with Victim during the recess in question and the reason for the approximate 50 minute break as follows:

[Victim] was upset. I, basically, led her out into the room—the hallway, the corridor in the back there (indicating), and I asked her how she was, and she was just shaking her head no. And I said to her that she was a very strong, little girl and that I knew she could do this. And I said to her, I know you can do this because you have super special sandals on. I was trying to take her mind off of the incident, and she looked up at me and smiled and immediately said, I have to go to the bathroom. And then we proceeded back into the courtroom from the other side, and I told Your Honor that she had to use the lady's room.

\* \* \*

Basically, we went in, [Victim] went to the bathroom, we came back out into the courtroom.

At that time, they had started another proceeding, another court hearing on another matter, and Your Honor suggested that [Victim], myself, and [Victim's] mother go back into the jury deliberation room to wait there until they were done with the hearing taking place at the moment.

\* \* \*

Basically, I just informed [Victim's] mother what was happening. She was confused as to why another court hearing was starting, so I explained to her, with the court schedule, we have to keep things moving. We weren't sure how long it was going to take [Victim] to calm

31–32, we do not find this evidence to be so clear and convincing as to constitute taint necessitating a finding that the court abused its discretion in this regard.[11] Therefore, Appellant's claim of trial court error in this regard is without merit.

▮ ¶ 24 Appellant's final claim is that the verdict rendered was against the weight of the evidence. The Supreme Court has stated that:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 560 Pa. 308, 319–20, 744 A.2d 745, 751–52 (2000) (citations, quotation marks, and footnote omitted). In other words, a court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997). The determination of whether to grant a new trial rests within the discretion of the trial court, and we will not disturb this determination absent an abuse of discretion. *Commonwealth v. Young*, 692 A.2d 1112, 1114 (Pa.Super.1997).

¶ 25 Herein, the trial court found, *inter alia*, that:

> At trial, I.C. testified that the [Appellant], her father, pulled her pajamas down while she was in his room, told her 'his pee-pee hurt' and then put his penis 'in her bottom.' I.C. testified that the [Appellant] told her not to tell anybody. I.C. was under the age of six at the time of the incident. When questioned if anybody told her to say the things that she testified to, I.C. indicated that she said what she said, 'because it is true, and he really did do it.'
>
> I.C.'s mother, [A.B.] testified that her daughter told her 'she had gone upstairs to sleep with her dad, and that he said that his pee-pee hurt and that he, at that time, put it in her behind.'
>
> I.C. also repeated these events to William Condron of the Berks County Children and Youth Office on two occasions, and Detective Yeich of the Berks County District Attorney's Office.

Trial Court Opinion filed 9/5/06 at 1–2 (references to transcript omitted).

¶ 26 After thorough review of the record, particularly the above testimony alluded to by the trial court, we do not find

---

down and be able to testify, and, basically, I answered questions. [Victim] was drawing, which I believe she gave to Your Honor afterwards, at the table in the deliberation room. N.T. 1/10/05 at 18–20.

11. The trial court found as follows:
 There was no evidence to show any coaching on the part of the victim's mother or the Commonwealth's victim/witness coordinator. The victim's memory while at times fuzzy, did not show taint but rather actual imperfect memory like most witnesses remembering most details but being a little less clear on others.
 Trial Court Opinion filed 7/18/05 at 7.

the verdict so contrary to the evidence as to shock one's sense of justice. Therefore, we conclude that the court did not abuse its discretion in rejecting Appellant's weight of the evidence challenge.

¶ 27 Based on the foregoing, we affirm the judgment of sentence.

¶ 28 Affirmed.