J-A20018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANDON MICHAEL MARTINKOVICH | : | |
| | : | |
| Appellant | : | No. 27 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 15, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0003497-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: NOVEMBER 8, 2021**

Appellant, Landon Michael Martinkovich, appeals from the judgment of sentence of 1-2 years' incarceration, and a concurrent term of 2 years' probation, imposed after the trial court convicted him of strangulation[1] and simple assault.[2] After a post-sentence evidentiary hearing, the trial court denied Appellant's challenge to the trial court's determination that he waived his right to a jury trial. Appellant argues that the trial court erred during that hearing by permitting the Commonwealth to elicit an answer from Appellant's trial counsel over his objection. After careful review, we affirm.

_____

[1] 18 Pa.C.S. § 2718.

[2] 18 Pa.C.S. § 2701.

Based on events that occurred on June 16, 2019,[3] the Commonwealth charged Appellant with strangulation and simple assault, and the case was initially scheduled for a jury trial. *See* Trial Court Opinion ("TCO"), 2/17/21, at 1. On January 27, 2020, the case was rescheduled for a non-jury trial by mutual agreement of the parties. *Id.* The non-jury trial commenced on June 19, 2020. *Id.* The trial court indicated that, prior to trial, it "erroneously failed … to question [Appellant] to determine whether he had knowingly and intelligently waived his right to a jury trial." *Id.* at 1-2. Furthermore, the "record is devoid of evidence that any prior colloquy to that effect had taken place or that [Appellant] made a waiver in writing." *Id.* at 2.

The trial court found Appellant guilty of both offenses, and deferred sentencing until July 15, 2020, at which time the court sentenced him as noted above. *Id.* at 4-5. While timely-filed post-sentence motions were pending, Appellant's current counsel entered his appearance.[4] Current counsel filed a supplemental post-sentence motion on November 20, 2020, "claiming that [Appellant]'s rights, as set forth in [Pa.R.Crim.P 620], were violated[,] and

_____

[3] The facts underlying Appellant's conviction are not relevant to the instant appeal.

[4] Appellant was represented in this case by his prior private counsel, Jeffrey Weinberg, Esq., from September 17, 2019, until September 22, 2020. *Id.* at 1, 5. Attorney Weinberg was replaced by Appellant's current counsel, Ryan James, Esq.

requesting a new trial." *Id.* at 5.[5]  On December 4, 2020, the trial court held

an evidentiary hearing to address the Rule 620 issue.

> The Commonwealth called [Attorney] Weinberg to testify at the evidentiary hearing.  [Attorney] Weinberg, who has practiced law for more than forty (40) years, testified that he began representing [Appellant] in approximately August [of] 2019, when [Appellant] was charged in another assault case in Armstrong County, involving the same victim.  [N.T., 12/4/20, at 5-6].  He testified that he had more than a dozen conversations with [Appellant] about waiving a jury trial - with conversations occurring at the Armstrong County Jail and at the Westmoreland County Prison.  [*Id.* at 7].  He told him that he could pick twelve disinterested individuals from the county where the case was being tried, but that he would "wish [he] hadn't."  [*Id.* at 7-8].  He told [Appellant] that he makes it his practice to "poke [his] head" into jury rooms in both counties and that the jurors look "interchangeable."  [*Id.* at 10].  He told [Appellant] that if he chose to proceed by jury, they would be able to exclude certain jurors.  [*Id.* at 19-20].  He also told him that the jury verdict would have to be unanimous, and that a majority decision would not result in an acquittal or conviction.  [*Id.* at 18].  His recommendation was to proceed with a non[-]jury trial for several reasons.  He believed it would be faster to obtain a non[-]jury trial and that if he were successful in the Westmoreland County case (which he believed was the stronger case for the defense), he would [be better] able to talk the Armstrong County District

---

[5] Rule 620 dictates that:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury.  The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620.

Attorney into making an acceptable plea offer in that case. [***Id.*** at 26-27]. He had also heard that the undersigned was a fair jurist and that certain Westmoreland County assistant district attorneys had not agreed to non[-]jury trials before the undersigned because he was new to criminal court and had not yet established a reputation. [***Id.*** at 23-24]. On cross-examination, [Attorney] Weinberg testified that although [Appellant] is not well-educated, "he is a smart kid." [***Id.*** at 20-21]. This is consistent with the [c]ourt's observations of [Appellant] during the non[-]jury trial and the evidentiary hearing.

[Appellant] testified by telephone at the evidentiary hearing. He claimed to have met with [Attorney] Weinberg on much fewer than twelve occasions prior to the non -jury trial. [***Id.*** at 29]. According to him, [Attorney] Weinberg never discussed differences between jury trials and non-jury trial[s,] and that if he had been advised of this, he would have selected that avenue as opposed to the non[-]jury trial. [***Id.*** at 29-30, 32-33]. He testified that [Attorney] Weinberg merely told him that a non[-]jury trial was their "best bet," and he trusted his attorney's decision. [***Id.*** at 35-36].

TCO at 5-6.

The trial court denied Appellant's supplemental post-sentence motion on December 7, 2020. Appellant subsequently filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on February 17, 2021.

Appellant now presents the following issue for our review:

Appellant was[ not] colloquied regarding the waiver of his jury right. He sought a new trial. The Commonwealth had to show a valid jury waiver by proving Appellant knew the "essential ingredients" of a jury trial. When Appellant's counsel did[ not] demonstrate a cognizance of the essential ingredients himself without the Commonwealth's leading, did the trial court err by allowing further questioning of counsel on "any other differences" pertaining to a jury that counsel had[ not] mentioned?

Appellant's Brief at 4.

- 4 -

Initially, Appellant acknowledges that this "appeal involves a single issue pertaining to the admission of evidence" and that an "evidentiary ruling is reviewed for abuse of discretion." *Id.* at 3; *see also Commonwealth v. Cesar*, 911 A.2d 978, 981 (Pa. Super. 2006) (stating, "the admission of evidence is within the sound discretion of the trial court, and decisions thereon will be reversed only upon a showing of an abuse of discretion"). An abuse of discretion is not merely an error of judgment; instead, "discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. 2000) (cleaned up).

Additionally, as the evidentiary issue here involves testimony concerning Appellant's waiver of his right to a jury trial, we note that the "waiver of a jury trial is a personal right of the accused." *Commonwealth v. Morin*, 383 A.2d 832, 834 (Pa. 1978). "The importance of the right is recognized by the procedural protections in Rule 620 of [our Supreme] Court's Criminal Procedural Rules[.]" *Commonwealth v. Mallory*, 941 A.2d 686, 696 (Pa. 2008).

> The essential elements of a jury waiver, though important and necessary to an appreciation of the right, are nevertheless simple to state and easy to understand. "The essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel."

*Id.* at 696–97 (quoting ***Commonwealth v. Williams***, 312 A.2d 597, 600 (Pa. 1973)) (cleaned up).

Although Rule 620 requires a colloquy when a defendant seeks to forgo his or her right a jury trial,

> [a] waiver colloquy is a procedural device; it is not a constitutional end or a constitutional "right." Citizens can waive their fundamental rights in the absence of a colloquy; indeed, waivers can occur by conduct or by implication, as in the case of a criminal trial conducted *in absentia* after the defendant fails to appear. ***See Commonwealth v. Wilson***, … 712 A.2d 735, 737 ([Pa.] 1998). Moreover, the absence of an on-the-record colloquy concerning the fundamentals of a trial by jury does not prove, in an absolute sense, that a defendant failed to understand the right he waived by proceeding non-jury. Consider, for example, a criminally-accused lawyer who waives a jury. Or, consider a career criminal defendant with previous, first-hand experience with jury trials. Or, imagine a reasonably intelligent client whose lawyer informed him, off the record, of the three basics of a jury trial. The record colloquy contemplated by Pa.R.Crim.P. 620 serves a salutary prophylactic purpose, as it makes it plain that a jury waiver is knowing and voluntary, and it creates a record in the event of a later, collateral attack upon the waiver. For the same twin reasons, an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, *e.g.*, waiver of a trial, waiver of the right to counsel, waiver of the right to call witnesses, waiver of the right to cross-examine witnesses, waiver of rules-based speedy trial time limits, etc. But the colloquy does not share the same status as the right itself.

***Mallory***, 941 A.2d at 697.

In the instant case, it is undisputed that Rule 620 was not followed, resulting in the absence of a pretrial record of Appellant's waiving his right to a jury trial by written and/or oral colloquy. Thus, because Appellant was not colloqued, "a post-sentence hearing was necessary to discern whether

- 6 -

[Appellant] nevertheless made a knowing, intelligent, and voluntary waiver of his jury right." Appellant's Brief at 11. At that hearing, the Commonwealth called Attorney Weinberg to testify regarding whether Appellant had voluntarily, knowingly, and intelligently waived his right to a jury, and, most pertinent to this appeal, whether Attorney Weinberg informed Appellant of the "three basics of a jury trial" before Appellant agreed to proceed without a jury. *Mallory*, 941 A.2d at 697.

Appellant contends that the Commonwealth initially struggled to elicit from Attorney Weinberg the critical elements of a jury trial, and "began to pose leading questions to direct [his] answers to the three essential ingredients." Appellant's Brief at 12. When the Commonwealth asked Attorney Weinberg whether he explained to Appellant his right to participate in jury selection, the trial court sustained Appellant's objection. N.T., 12/4/20, at 9. After the Commonwealth's question was rephrased, Attorney Weinberg explained that he told Appellant that he would be present with counsel when the jury was picked. *Id.* at 10. The Commonwealth then began to ask Attorney Weinberg whether he told Appellant that the jury's verdict would have to be unanimous, at which point Appellant objected to the question as leading, and then asked for a sidebar. *Id.* At the sidebar, the following exchange occurred:

> MR. JAMES: Your Honor, it was important for me to interpose an objection before the question was … finished because the very nature of the question would inform … this practitioner … [regarding] a distinction that he's supposed to explain to his client. I think the appropriate question to be asked is: what did you tell

him were the three differences? What did you tell him were the differences between a jury and a non-jury trial? But the prosecutor in this case is trying to lead and give an answer in the question.

THE COURT: What was your question going to be?

[THE COMMONWEALTH]: Whether he had explained to [Appellant] whether the verdict had to be unanimous or a majority verdict or whether []he explained those rights. Mr. Weinberg is not answering my questions very directly, and I'm trying to keep him on track with whether he was explaining his actual constitutional rights, and it sounds to me like the conversations that he had with [Appellant] may have covered a wide range of different trial strategies. I'm trying to hone him in on whether he actually explained these things to him, and he can answer truthfully as to whether he explained those things.

THE COURT: You can't lead. If she asks the question, did you discuss anything about – I don't know that that's a leading question. Did you discuss anything about whether it had to be unanimous or not? If she says, did you tell him that it had to be unanimous, I think that's a leading question.

***

MR. JAMES: I think the very suggestion about the issue of unanimity signals to this practitioner that oh, that must be where I'm going. This is something I had to research myself. I think that the question[:] Mr. Weinberg, did you explain to [Appellant] what the critical differences are between a jury trial and a non-jury trial – if he would have known that and if he would have went over that, he should hit on three things that are at issue….

*Id.* at 11-14.

When the court indicated that, although the Commonwealth was not permitted to ask leading questions, it was permitted "to follow up with the witness and try to get more specific[,]" Attorney James responded, "I don't disagree with that." *Id.* at 14. However, Attorney James nevertheless argued that the prosecutor could not suggest any of the three ingredients in the

- 8 -

questions posed. *Id.* Instead, he suggested "the most appropriate question is: Mr. Weinberg, did you talk to [Appellant] about the differences between a jury trial and a non-jury trial? He's either going to say yes or no. If he says yes, what are those differences Mr. Weinberg, and see what he says." *Id.*

The Commonwealth assented to Attorney James' formation of the question and, following the sidebar, the Commonwealth asked Attorney Weinberg, "during the discussions that you had with [Appellant], did you explain to him outside of your trial strategy in this particular case what the differences are between a jury trial and a non-jury trial?"[6] *Id.* at 17. Attorney Weinberg answered:

> Yes. A jury trial involves 12 disinterested citizens of this county, and [at] a non-jury trial, the judge makes the determination. But I did tell him that my experience with Judge Mears and with the District Attorney's Office was that you're going to get a good trial in front of Mears. He's a fair guy, and if this story turns out to be the way you state it, you've got a good chance.

*Id.* at 17-18.

The Commonwealth responded to Attorney Weinberg's answer with a follow-up question, and the focus of this appeal, asking: "Did you explain to him any other differences, again, outside of your evaluation of the judge and the District Attorney's Office? Did you explain to him other differences between a jury trial and a non[-]jury trial aside from 12 people will decide or one person will decide?" *Id.* at 18. Attorney James objected on the basis

_____

[6] The Commonwealth acquiesced to phrasing the question as suggested by Appellant's counsel even though the trial court had technically overruled Appellant's preceding objection. *Id.* at 17.

that the question had been "asked and answered[,]" but the court overruled his objection. *Id.* at 18. Attorney Weinberg then answered the question as follows:

> I think he asked me about what happens if the jury gets hung or something if the can't – boy, you're asking me to go back in my memory. We had a discussion, I think, about a hung jury. I think he asked me. I said, no, it's got to be unanimous. I told him that. It's got to be that 12 people have to say you're guilty. That's what I recall[,] anyway.

*Id.*

Appellant argues that for "each of the Commonwealth's relevant questions on the topic, … [Attorney Weinberg]'s responsive testimony never made clear any discussion with [Appellant] about the three 'essential ingredients' — *at least not without an assist from the Commonwealth*." Appellant's Brief at 16 (emphasis added). Appellant contends the trial court abused its discretion when, following his asked-and-answered objection, the "court indulged the Commonwealth for another opportunity to reorient trial counsel to what was finally his epiphany regarding the unanimity of a jury verdict." *Id.* at 17.

The Commonwealth asserts that Appellant "overcomplicates what boils down to a very simple issue: whether the trial court abused its discretion by overruling Appellant's" asked-and-answered objection. Commonwealth's Brief at 7. The Commonwealth contends that the question subject to Appellant's objection was, on its face, asking "for information not already given in response to the previous question, and therefore not already asked

- 10 -

and answered." *Id.* at 8. As such, the Commonwealth argues that the trial court's overruling Appellant's asked-and-answered objection was neither manifestly unreasonable nor a misapplication of the law. *Id.* at 9. Furthermore, countering any suggestion that the court's ruling was the product of partiality, prejudice, bias, or ill will, the Commonwealth points to the trial court's

> candor in conceding his own mistake by not conducting a jury waiver, as well as the trial court's acknowledgement on the record that its job was not to help the Commonwealth. Additionally, the fact that the majority of Appellant's objections leading up to the "asked and answered" objection were sustained demonstrates the trial court's fairness to both sides, and the fact that the trial court entertained a nine-minute-long sidebar on one of Appellant's objections demonstrates his thoughtfulness in his rulings. Appellant's argument does not meet the high burden that is required for a showing of abuse of discretion.

*Id.* at 9-10 (citations omitted).

Appellant's evidentiary claim concerns whether he knowingly and intelligently waived his right to a jury trial.[7] Appellant does not contend that he was incapable of understanding his right to a jury trial or the consequences of waiving that right. Rather, he maintains that the Commonwealth failed to prove — through admissible evidence — that Attorney Weinberg advised him of the essential elements of a jury trial prior to Appellant's waiver of his jury-trial right.

_____

[7] The testimonies of Appellant and Attorney Weinberg at the hearing provided inconsistent accounts of whether Appellant **voluntarily** waived his right to a jury trial, independent of whether that decision was intelligently and knowingly made. The trial court resolved that credibility conflict against Appellant, and that determination is not being challenged in this appeal.

- 11 -

In this regard, Appellant concedes that the net substance of Attorney Weinberg's post-sentence motion hearing testimony was at least facially sufficient to establish that he had communicated the 'essential elements' of a jury trial to Appellant. Nevertheless, Appellant contends that the Commonwealth only met this burden by unfairly coaxing that testimony from Attorney Weinberg with leading and asked-and-answered questions.

However, we agree with the Commonwealth that the discrete and narrow issue before us concerns a mundane asked-and-answered objection, and we conclude that Appellant has failed to meet his burden in demonstrating that the trial court abused its discretion in overruling that objection. The at-issue question, by its very nature, sought information not already testified to by Attorney Weinberg. Attorney Weinberg was asked by the Commonwealth if he explained to Appellant "any other differences" between a jury and non-jury trial. The form of the question necessarily implied that the Commonwealth was seeking an answer that had not yet been given by Attorney Weinberg. Accordingly, the trial court did not misapply the law or act unreasonably in overruling the objection. Moreover, we ascertain nothing in the record tending to demonstrate that the court's discretion was influenced by the presence of partiality, prejudice, bias, or ill will. Accordingly, Appellant's argument that the question had been asked and answered lacks merit.

To the extent Appellant claims that Attorney Weinberg was only able to recall the essential elements of the jury trial through the cajoling of the

Commonwealth, such that it calls into question the credibility of Attorney Weinberg's testimony that he conveyed the same to Appellant in persuading him to proceed non-jury, that argument goes to the weight of the evidence, not its admissibility. Appellant did not present a weight-of-the-evidence claim in his Rule 1925(b) statement, and any issue not raised in a 1925(b) statement is waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2021